COMMERCE FEDERAL SAVINGS BANK, Plaintiff–Appellant,

v.

FEDERAL DEPOSIT INSURANCE CORP., Defendant–Appellee.

No. 87–5568.

United States Court of Appeals, Sixth Circuit.

Argued May 2, 1988.

Decided April 17, 1989.

Lawrence M. House (argued), Alice P.L. Schwartz, Knoxville, Tenn., Thomas R. Dyer (argued), Memphis, Tenn., for plaintiff-appellant.

Rex R. Veal, D.M. Tranum, M.E. Tucci (argued), Knoxville, Tenn., for defendant-appellee.

Before KRUPANSKY and NELSON, Circuit Judges; and HACKETT, District Judge.*

KRUPANSKY, Circuit Judge.

Commerce Federal Savings Bank (Commerce Federal), the plaintiff-appellant in this case, has appealed from judgment granted in favor of the Federal Deposit Insurance Corporation (FDIC), defendant-appellee, following a bench trial. Commerce Federal had commenced this action in state court alleging full payment and satisfaction of the indebtedness secured by a deed of trust, seeking to enjoin the FDIC to release the deed of trust impressed upon certain real property, and requesting imposition of statutory penalties, punitive damages, costs and attorney's fees against the FDIC pursuant to Tennessee law for the failure of the FDIC to have released the deed of trust. The case was duly removed to the United States District Court for the Eastern District of Tennessee. The district court decided that Commerce Federal was precluded from initiating this action against the FDIC by the terms of 12 U.S.C. A. § 1823(e) (West Supp.1988).

The record disclosed the following facts. Roger Moore, an individual, and R.M. Moore & Associates, Inc. (Moore & Associates, Inc.) owned a parcel of real property known as the "Chapman Property." On September 10, 1979, Roger Moore, in his capacity as president of Moore & Associates, Inc., executed a deed of trust,[1] which

---

* Honorable Barbara K. Hackett, United States District Court for the Eastern District of Michigan, sitting by designation.

1. A deed of trust is a conveyance designed to secure an underlying obligation which is comparable to a mortgage.

    [A deed of trust] normally involved a conveyance of the realty to a third person in trust to hold as security for the payment of the debt to the lender-noteholder whose role is analogous to that of the mortgageee. Deeds of trust will almost always contain a power of sale in the trustee to be exercised after a default at the request of the lender-noteholder. Such a deed of trust is essentially similar to a mortgage with a power of sale.... Most courts today are inclined to treat a deed of trust like a mortgage for other purposes as well.

incorporated a "dragnet clause," [2] in favor of W.F. Shumate, Jr., trustee for City and County Bank of Knox County, Tennessee (C & C Bank), to secure a loan from C & C Bank to Moore & Associates, Inc., obligor, in the amount of $125,000.00—together with any and all additional obligations, past, present and future of Moore & Associates, Inc. The deed of trust provided in pertinent part that:

[T]his conveyance is made IN TRUST to secure the full, prompt and final payment of any and all indebtedness, principal, interest, attorney's fees and costs, as may be provided in instruments evidencing such indebtedness, or otherwise, now or hereafter owing, directly or indirectly, or as endorser or guarantor for others, to City & County Bank of Knox County ("Beneficiary"), its successors and assigns, by the undersigned, or any of them, and specifically, but not limited to the following purpose, to wit:

Whereas R.M. Moore & Associates, Inc. ("Obligor") is indebted to the Beneficiary in the sum of One Hundred Twenty-five Thousand and no/100 ($125,000) Dollars, evidenced by One (1) promissory note(s) described as follows: Dated of even date herewith, and bearing interest at a per annum rate of 10½%, principal and interest being due and payable in 120 consecutive monthly installments of $1,686.69 each, beginning on the *10th* day of October, 1979, and continuing on the same day of each consecutive month thereafter until payment in full [sic]

The dragnet provision also expressly provided that the deed of trust would be extinguished if all outstanding debt encumbering the instrument were timely retired.

Now, if the Obligor shall pay the sum(s) aforesaid when due, according to the terms of said note(s) and/or any and all renewals and extensions thereof, and any other debt or debts herein secured, then this conveyance is to be of no further force or effect.

On March 16, 1983, Commerce Capital Corporation (Commerce Capital), a wholly owned subsidiary of Commerce Federal Savings Bank, contacted C & C Bank by telephone and requested the amount of the outstanding balance due on the Moore & Associates, Inc. promissory note, payment of which would satisfy the indebtedness of Moore & Associates, Inc. and extinguish the deed of trust. The note, on its face, referenced the deed of trust as security for the $125,000 loan evidenced by the note. An employee of C & C Bank advised Commerce Capital that the payoff figure was $98,729.22. Commerce Capital immediately forwarded a draft to C & C bank in the amount of $98,729.22 with the following endorsement on its face, "payment in full—540505507613 R.M. Moore," along with a memorandum which read:

I am enclosing a check in the amount of $98,729.22 for payment in full for R.M. Moore. Please mail copy of recorded release as soon as possible so that we may obtain Final Title.

C & C Bank negotiated the check on March 18, 1983, and noted on the loan history card that the entire outstanding indebtedness evidenced by the note secured by the trust deed was "paid in full." [3]

---

G. Osborne, G. Nelson, D. Whitman, *Real Estate Finance Law* § 1.6, at 11 (1st ed. 1979); *accord* 59 C.J.S. *Mortgages* § 6, at 31 (1949); *id.* § 5, at 31.

**2.** "[A] dragnet clause is a mortgage provision which purports to make the real estate security for other, usually unspecified, debts which the mortgagor may already owe or may owe in the future to the mortgagee." G. Osborne, G. Nelson, D. Whitman, *Real Estate Finance Law* § 12.8, at 772 (1st ed. 1979).

**3.** The promissory note in question was not introduced into the trial record. The existence of the loan and its history, by agreement of the parties, was evidenced by the "loan history card," a permanent record controlled and maintained by C & C Bank. The card identified the loan as "Loan 5405505507613" and reflected that the funds had been disbursed to Moore & Associates, Inc. on the same date that the note and deed of trust were executed. In commenting upon the final payment of the outstanding balance on the initial note and its securing trust deed, the district court in its opinion concluded as follows:

It is undisputed that the balance due on the note was, in fact, $98,729.22; that Commerce issued C & C Bank a check in that amount, bearing the notation "Payment in Full—5405507613 R.M. Moore"; that the bank accepted the check and marked the note's

On March 16, 1983, Roger M. Moore, as an individual, executed a warranty deed conveying the Chapman Property to Commerce Capital. On the same date, Moore & Associates, Inc. conveyed the same property to Commerce Capital by quitclaim deed.[4] On April 21, 1983, C & C Bank sent Commerce Capital a copy of a letter from a title attorney, which indicated that the deed of trust had not been released as of that date. There was a handwritten notation dated May 6, 1983 on Commerce Capital's copy of that letter stating that a representative of Commerce Capital had "[t]alked with Kay Leake C & C—doesn't think it has been released, but no problem that she's aware of—will follow up."

The C & C Bank failed on May 27, 1983, at which time the FDIC was appointed as receiver of its assets. Subsequently, the FDIC, acting in its corporate capacity, by a purchase and assumption agreement acquired various assets of the C & C Bank from the FDIC receivership.[5] In its acquisition was the described deed of trust, and the note payable to C & C Bank dated September 10, 1979 in the amount of $125,000. A second promissory note executed by Moore & Associates, Inc. in the amount of $50,000 was also included in the FDIC acquisition. This second note was not introduced into the record, and no evidence was developed to disclose the date on which the second note was executed or delivered, i.e., whether it was before or after the date of the $98,729.22 payment.

On May 5th, 1988, Commerce Capital conveyed by quitclaim deed its encumbered interest in the Chapman Property to Commerce Federal. Commerce Federal thereafter was unsuccessful in obtaining a release of the deed of trust from the FDIC without satisfying the $50,000 obligation, which the FDIC insisted was secured by the deed of trust pursuant to the terms of its dragnet clause. Commerce Federal initiated the present action on August 20, 1986 in the Chancery Court for Knox County seeking declaratory relief enjoining the FDIC to release the deed of trust pursuant to Tennessee Code Annotated § 66–25–101,[6] together with fines, punitive damages, costs and attorney's fees pursuant to Tennessee Code Annotated § 66–25–102.[7]

loan history card "paid in full"; and that, for some reason unknown to either party, C & C Bank never released the deed of trust.
*District Court Opinion and Order of April 13, 1987,* at 2.

4. These conveyances were part of a packgage arrangement whereby Moore conveyed the interest in the Chapman Property to Commerce Capital for $110,052.14 in cash, along with the payment by Commerce Capital of the outstanding mortgage in the amount of $98,729.22 and $710.56 in outstanding city and county taxes.

5. "The FDIC was authorized by 12 U.S.C. § 1823(e) to act in its corporate capacity to purchase certain assets of a closed bank, even when the FDIC itself acts as the receiver...." *Federal Deposit Ins. Corp. v. Ashley,* 585 F.2d 157, 161 (6th Cir.1978); *accord Federal Deposit Ins. Corp. v. Blue Rock Shopping Center, Inc.,* 766 F.2d 744, 748 (3rd Cir.1985) ("[The] FDIC insures bank deposits; as an insurer one of its primary duties is to pay the depositors of a failed bank. In the course of fulfilling this duty, [the] FDIC frequently purchases the assets of a failed bank and then attempts to collect on them in order to minimize the loss to the insurance fund.").

6. The statute provides as follows:

**Release of record required.**—When a debt secured by a mortgage, deed of trust, or by lien retained in a deed of conveyance of land or bill of sale, or other instrument, has been fully paid or satisfied, the mortgagee, transferee, or assigneee [sic] of the mortgagee or the legal holder of the debt secured by deed of trust or lien who has received payment or satisfaction of the debt, must satisfy the record either by entry on the margin of the record of the mortgage, deed of trust, deed or other instrument, or by a formal deed of release.
Tenn.Code Ann. § 66–25–101 (1982).

7. The statutory provision is set forth below:

**Penalty for failure to release.**—(a) If the holder of any debt secured by real property situated in this state shall arbitrarily or unreasonably fail to enter a proper release of record after having been fully paid or satisfied within thirty (30) days from the receipt of a written request from the party making such payment, including, but not limited to the maker, the mortgagor, the purchaser of the property covered by such instrument or any closing agent or attorney who has collected and transmitted funds for such payment, the holder of the debt shall forfeit to the party making such request the sum of one hundred ($100).

The FDIC removed the case to federal court pursuant to 12 U.S.C.A. § 1819 (West 1980) and 28 U.S.C.A. § 1441 (West Supp. 1988). *See, e.g., Federal Deposit Ins. Corp. v. O'Neill,* 809 F.2d 350, 352 (7th Cir.1987). The district court, subsequent to a bench trial, issued an opinion and order on April 13, 1987 in favor of the FDIC, and dismissed the complaint.

The district court noted that the deed of trust had incorporated a broad "dragnet clause" which secured, among other obligations, any subsequent debts which existed prior to the retirement of the primary indebtedness of $125,000.00. The district court determined that C & C Bank had agreed to cancel the "dragnet clause" of the deed of trust, in return for payment of $98,729.22, the outstanding balance on the $125,000 note specifically identified in the deed of trust. The district court further concluded that the FDIC had purchased the second promissory note executed by Moore & Associates, Inc. in the amount of $50,000 as part of its Purchase and Assumption Agreement. Finally, the court decided that although Commerce Capital had relied upon the promise from C & C Bank to cancel the deed of trust in exchange for payment of the $98,729.22 outstanding balance on the initial promissory note, the promise was an oral agreement and not in writing as required by 12 U.S.C.A. § 1823(e)[8] and therefore did not defeat the rights and interests of the FDIC in the deed of trust because it did not satisfy the specific requirements listed under § 1823(e).

> (b) If the indebtedness is not released within the aforestated thirty (30) day period, the party having requested the release shall again request the release, and, if after thirty (30) days from the second request, the indebtedness has not been released, the holder shall forfeit to the party making the request a sum not to exceed one thousand dollars ($1,000).
> (c) In the event suit is instituted to collect either or both of the forfeitures, the holder shall also be liable to the party instituting suit for all reasonable expenses, attorney fees, and the court costs incurred in the action.

Tenn.Code Ann. § 66–25–102 (1982).

**8.** Section 1823(e) provides as follows:
> **(e) Agreements against the interests of Corporation.**

Commerce Federal timely appealed the decision of the district court.

██ On appeal, Commerce Federal has, *inter alia,* advanced the argument that the deed of trust here in issue was not an asset of the FDIC because, as a matter of law, it had been extinguished upon the payment of $98,729.22, which was the only existing outstanding indebtedness secured by the deed of trust on March 16, 1983, and that the district court erred in denying the appellant's petition seeking the release of the deed of trust because C & C's promise to waive the dragnet requirements of the security were not in writing as mandated by section 1823(e). It is well established that "[s]ection 1823(e) does not apply to every inquiry concerning an asset." *Federal Deposit Ins. Corp. v. Merchants Nat'l Bank of Mobile,* 725 F.2d 634, 639 (11th Cir.), *cert. denied,* 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984); *accord Federal Deposit Ins. Corp. v. Blue Rock Shopping Center, Inc.,* 766 F.2d 744, 753 (3rd Cir.1985) ("Section 1823(e) does not ... protect [the] FDIC against all defenses."). The language of section 1823(e), which provides that "[n]o *agreement* which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it under this section ... shall be valid against the Corporation," indicates that it applies only to an action or defense which is anchored in an agreement separate and collateral from the instrument which the FDIC is seeking to protect.

> No agreement which tends to diminish or defeat the right, title or interest of the Corporation [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

12 U.S.C.A. § 1823(e) (West Supp.1988).

The purpose [of section 1823(e)] is to protect the FDIC from hidden agreements that would defeat its interest in what is otherwise a facially valid note. Such hidden agreements would prevent the FDIC from accurately valuing assets and from making informed decisions on how best to handle a bank's insolvency. The concern is thus with agreements that are not made part of the note.

*Federal Deposit Ins. Corp. v. Hatmaker,* 756 F.2d 34, 37 (6th Cir.1985); *see also O'Neil,* 809 F.2d at 354; *Howell v. Continental Credit Corp.,* 655 F.2d 743, 746–47 (7th Cir.1981); *compare Langley v. Federal Deposit Ins. Corp.,* 484 U.S. 86, 89, 90, 108 S.Ct. 396, 401, 402, 98 L.Ed.2d 340 (1987).

In contrast, however the statute "does not apply when ... the parties contend that no asset exists ... *and* that such invalidity is caused by acts independent of any understanding or side agreement." *Merchants Nat'l Bank of Mobile,* 725 F.2d at 639 (emphasis in original); *Blue Rock Shopping Center, Inc.,* 766 F.2d at 753 (same); *accord Federal Deposit Ins. Corp. v. Leach,* 772 F.2d 1262, 1267 (6th Cir.1985) ("By its terms, [section 1823(e)] protects the FDIC from unwritten agreements that otherwise might be asserted to diminish or defeat its rights in assets acquired from a failed bank. However, the claim asserted by [appellant] is not in the nature of an agreement."); *compare Federal Deposit Ins. Corp. v. Prann,* 694 F.Supp. 1027, 1037 (D.P.R.1988) ("Section 1823(e) is inapplicable to the present case because the debt which forms the basis of the asset claimed by FDIC was satisfied *before* FDIC acquired the bank's assets.") (emphasis in original); *Federal Deposit Ins. Corp. v. Nemecek,* 641 F.Supp. 740, 743 (D.Kan. 1986) ("[W]hen the FDIC purchased the Bank's assets, it could not have purchased defendants' note, as it had been previously extinguished. Section 1823(e) applies only

to assets which the FDIC *has* acquired.") (emphasis in original); *cf. Federal Deposit Ins. Corp. v. Venture Contractors, Inc.,* 825 F.2d 143, 149 (7th Cir.1987) (FDIC bound by limitations contained in the interest acquired under purchase and assumption agreement); *O'Neil,* 809 F.2d at 354 (Section 1823(e) is not implicated by a defense which "appeared in the asset itself.").

■ In the case at bar, Commerce Federal charged that the deed of trust was not an acquired asset of the FDIC, because it, Commerce Federal, had satisfied all outstanding indebtedness secured by that instrument on March 16, 1983, upon the payment of $98,729.22. Appellant's position is supported by existing precedent addressing the legal effect of retiring an underlying obligation secured by a conveyancing document, which provides that upon full satisfaction of the secured indebtedness, the security is extinguished as a matter of law.

It has long been established that payment of the mortgage debt on "law day" will extinguish the mortgagee's security interest in the property and restore full legal ownership to the mortgagor without the necessity of a reconveyance, release or any other instrument being executed by the mortgagee. And the same effect is given to payment which is accepted before the law day.

G. Osborne, G. Nelson, D. Whitman, *Real Estate Finance Law* § 6.4, at 383 (1st ed. 1979) (footnotes omitted); *accord id.* § 6.4, at 385 ("[A]lien is security only for the performance of an act and if the act has been performed there is nothing for the lien to secure and it is, therefore, extinguished."); 59 C.J.S. *Mortgages* § 6, at 32 ("Like a mortgage, ... a deed [of trust] is a mere security for a debt or for the performance of certain undertakings by the grantor.... It is a mere incident to the debt which it secures, on which it depends, and which it follows....") (footnotes omitted).[9]

---

9. *See generally* 59 C.J.S. *Mortgages* § 453, at 708–09 (1949):

[I]t is well established that, where a mortgage is given to secure the payment of a specific debt, payment of such debt as a general rule, in the absence of a contrary intent, extin-

guishes or discharges the mortgage and in the lien thereof and terminates the mortgagee's rights as such where ... the debt is paid by the mortgagor or by a purchaser of the mortgaged premises who assumed payment of the mortgage....

The uncontroverted documentation and testimony verifying the March 16, 1983 final payment by Commerce Federal of the outstanding balance of $98,729.22 due on the initial $125,000 promissory note coupled with the repeated assurances, both written and oral,[10] by C & C Bank that the March 16, 1983 payment constituted "payment in full" of all Moore & Associates, Inc.'s outstanding indebtedness secured by the deed trust created a rebuttable presumption in favor of Commerce Federal that no additional indebtedness, including the $50,000 loan herein controversy, was secured by the deed of trust by virtue of its "dragnet" on March 16, 1983 when the $98,729.22 payment fully satisfied the balance due on the primary loan of September 10, 1979 and extinguished the deed of trust.

> [W]here release of the mortgage is shown, the burden of showing that it was not intended to operate as an extinguishment of the debt is on the party asserting its continuance. Where a rebuttable presumption of payment arises from the facts or a prima facie showing of payment is made, the burden is on the party claiming nonpayment to rebut such presumption or to overcome such showing.

59 C.J.S. *Mortgages* § 452(a), at 703 (1949) (footnotes omitted); *semble id.* § 452(a), at 704.

The FDIC has conceded that it did not introduce into evidence a second note memorializing a loan to Moore & Associates, Inc. in the amount of $50,000, or any other amount, payment of which could arguably have been secured by the deed of trust as a result of its "dragnet" provisions. The record fails to disclose any evidence whatsoever concerning the note, including its date, terms and conditions of payment, the obligor or other pertinent information from which this court could intelligently conclude or infer that it preexisted the March 16, 1983 payment of $98,729.22 by Commerce Federal. Because the FDIC failed to come forward with any evidence to prove that the second promissory note existed on or before March 16, 1983, it failed to rebut the presumption that the deed of trust was extinguished by operation of law by the $98,729.22 payment of that date, and, consequently, it failed to prove that the deed of trust was an "asset" at the time of its purchase and assumption agreement. Accordingly, the district erred in concluding that Commerce Federal was barred by the terms of section 1823(e) from asserting its claim of full payment and satisfaction against the FDIC for the release of the deed of trust. *Compare Blue Rock Shopping Center, Inc.*, 766 F.2d at 753; *Merchants Nat'l Bank of Mobile*, 725 F.2d at 639; *Federal Deposit Ins. Corp. v. Rivera–Arroyo*, 645 F.Supp. 511, 521 (D.P. R.1986) ("[The] FDIC's position that we should simply ignore the terms and conditions of the Loan and Pledge Agreement and let it collect on the notes, notwithstanding any valid defense that [plaintiff] may raise pursuant to that agreement, cannot be seriously considered.").

The FDIC has urged, in the alternative, that as a holder in due course of the note and deed of trust here at issue, it was, under federal common law, shielded from all available personal defenses contesting the collectibility of negotiable notes, including full payment and satisfaction of the underlying debt. *See Federal Deposit Ins. Corp. v. Wood*, 758 F.2d 156, 161 (6th Cir.),

---

(footnotes omitted); 59 *id.* § 444, at 689–90: [T]he lien of a mortgage continues until the debt is paid or the lien extinguished by release or operation of law.... Under the modern doctrine that the debt or obligation secured is the principal thing and the mortgage only an incident or accessory to it, it follows as a general rule that whatever extinguishes, discharges, or satisfies the debt or obligation will also discharge the mortgage.
(footnotes omitted).

**10.** Since the original note for $125,000 was lost, the only evidence of its contents was the loan history card which memorialized the loan as well at its payment history, and which was relied upon by the FDIC as written proof of the loan. The district court specifically noted that the card carried the following written record— "paid in full"—without any evidence to prove that the second note in the amount of $50,000 predated the $98,729.22 payment. Because of this absence of material evidence, as reflected above, this court's disposition is confined to the limited parameters of the facts actually developed during the course of the trial.

*cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985); *see also Federal Deposit Ins. Corp. v. Cremona Co.,* 832 F.2d 959, 964 (6th Cir.1987), *cert. dismissed sub nom. Gonda v. Federal Deposit Ins. Corp.,* —— U.S. ——, 108 S.Ct. 1494, 99 L.Ed.2d 879 (1988); *Federal Deposit Ins. Corp. v. Armstrong,* 784 F.2d 741, 745 (6th Cir.1986); *Leach,* 772 F.2d at 1266; *Hatmaker,* 756 F.2d at 38 & n. 5; *Gilman v. Federal Deposit Ins. Corp.,* 660 F.2d 688, 695 (6th Cir.1981).

It would appear from the facts developed by the evidence that the "holder in due course" argument addressed by the parties is resolved by this court's hereinbefore articulated disposition. Initially, it is apparent that this court is confronted by two notes ostensibly secured by a single trust deed. The primary indebtedness was memorialized by a note in the amount of $125,000 which had been concededly satisfied in full by the $98,729.22 payment of March 16, 1983, thereby extinguishing the deed of trust as it secured that liability. There also existed the secondary liability of $50,000 evidenced by another note which was allegedly secured by the same deed of trust by virtue of its dragnet clause.

Accordingly, the issue confronting this court is not the validity of the second note or the FDIC's right or authority, as the real party in interest either as a holder in due course or in some other legal capacity, to pursue the recovery of the $50,000 indebtedness evidenced by the second note which would validly give rise to the FDIC's holder in due course argument and the related protection from personal defenses available pursuant to that doctrine—those facts are conceded. Rather, this court must decide the unrelated issue of the nexus, if any existed, between the second note and the trust deed by virtue of the dragnet clause in that deed. In sum, if a nexus, the burden of which is upon the appellee to prove, cannot be sustained by evidence of sufficient weight to demonstrate that the second note was executed on or before March 16, 1983, the FDIC is without recourse and should cancel and return the deed of trust to the appellant.

From the record, the appellant had carried its initial burden of proving a *prima facie* case by evidence, supporting the conclusion that no secondary indebtedness of any kind existed on March 16, 1983, the date that it paid the outstanding balance of the primary loan as reflected by the C & C Bank's "paid in full" oral and documentary acknowledgments. The FDIC thereafter assumed the burden of rebutting the presumption in favor of the appellant that there were no additional outstanding liabilities on March 16, 1983 that were secured by the trust deed apart from the balance due on the primary debt. This court, having concluded that the issue of "holder in due course" has not been joined by the facts of this case, the FDIC's effort to rely upon the holder in due course doctrine is misconceived and, having failed to offer any proof whatsoever to dispel the presumption in favor of appellant that the second note had not been executed and delivered before March 16, 1983, this court is constrained to order the appellee to cancel and deliver the deed of trust here in issue to the appellant for the reason that the FDIC has failed to prove the date upon which the second note was executed or to introduce other proof of a nexus between it and the deed of trust.

Finally, the FDIC has urged this court to absolve it from punitive forfeitures and penalties authorized by Tenn.Code Ann. § 66–25–102 (1982) as a result of its refusal to release the deed of trust, asserting that agencies of the United States are immune from such exemplary state law penalties. Appellee has correctly asserted that the United States and its instrumentalities are immune from suit except to the extent that such immunity has been waived. *See, e.g., Loeffler v. Frank,* —— U.S. ——, ——, 108 S.Ct. 1965, 1969, 100 L.Ed.2d 549 (1988); *Library of Congress v. Shaw,* 478 U.S. 310, 315, 106 S.Ct. 2957, 2962, 92 L.Ed.2d 250 (1986); *Lehman v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981); *compare Selden Apartments v. United States Dep't of Housing & Urban Dev.,* 785 F.2d 152, 156 (6th Cir.1986). In *Missouri Pac. R.R. Co. v. Ault,* 256 U.S. 554, 41 S.Ct. 593, 65

L.Ed. 1087 (1921), the Supreme Court concluded that, in light of the doctrine of sovereign immunity, the courts lacked the authority to impose punitive fines or assessments upon an instrumentality of the United States, absent an express waiver of such immunity by Congress. *Ault*, 256 U.S. at 563–65, 41 S.Ct. at 597; *accord Norfolk–Southern R.R. Co. v. Owens*, 256 U.S. 565, 565, 41 S.Ct. 597, 598, 65 L.Ed. 1093 (1921); *see also Smith v. Russellville Prod. Credit Ass'n*, 777 F.2d 1544, 1549 (11th Cir.1985) ("The established rule is that punitive damages cannot be recovered from the United States or its agencies."); *id.* at 1550 ("[T]he principle of sovereign immunity ... generally bars the award of punitive damages in actions against the United States as sovereign."); *In re Matter of Sparkman* (*Merced Prod. Credit Ass'n v. Sparkman*), 703 F.2d 1097, 1100 (9th Cir.1983) (It is a "long-established principle that the United States, its agencies, and instrumentalities cannot be held liable for punitive damages unless there is express statutory authority for such liability."); *id.* at 1101 ("A federal instrumentality, therefore, retains its immunity from punitive damages unless Congress *explicitly* authorizes liability for such damages.") (emphasis in original); *Painter v. Tennessee Valley Auth.*, 476 F.2d 943, 944 (5th Cir.1973) (per curiam) ("[T]he established rule [is] that punitive damages cannot be recovered from the United States or its agencies."). Accordingly, because the FDIC is clearly an instrumentality of the United States, *see, e.g., Rausher Pierce Refsnes, Inc. v. Federal Deposit Ins. Corp.*, 789 F.2d 313, 314–15 (5th Cir.1986); *see also Woodbridge Plaza v. Bank of Irvine*, 815 F.2d 538, 543 (9th Cir.1987); *Gregory v. Mitchell*, 634 F.2d 199 (5th Cir.1981); *Federal Deposit Ins. Corp. v. City Bank & Trust Co.*, 592 F.2d 364, 368–73 (7th Cir.), *cert. denied*, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979); *Safeway Portland Employee's Federal Credit Union v. Federal Deposit Ins. Corp.*, 506 F.2d 1213 (9th Cir.1974), and since the appellant has failed to identify any express Congressional authority permitting imposition of punitive fines or penalties against the FDIC under state law,

the mandate of *Ault* and its progeny compels the conclusion that Commerce Federal cannot recover such penalties pursuant to Tenn.Code Ann. § 66–25–102 (1982) upon remand to the district court.

Accordingly, the decision of the district court is REVERSED and REMANDED for further proceedings consistent with this opinion.