In the Matter of the **ESTATE OF Taldine THIES, Deceased.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, Appellee,**

v.

**Esther L. HAUPT, Executor of the Estate of Taldine Thies, Appellant.**

**No. 89–1559.**

Supreme Court of Iowa.

Nov. 21, 1990.

Jack A. Hall of Wilson, Hall & Craig, Eldora, for appellant.

Paul A. Zoss, Michael R. Nelson, and G. Mark Rice of Adams, Howe & Zoss, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and SCHULTZ, LAVORATO, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

Any agreement that would otherwise defeat the rights of the Federal Deposit Insurance Corporation (FDIC) in any asset it obtains from a failed bank is invalid unless certain requirements are met. *See* 12 U.S.C. § 1823(e) (1982). The district court sustained the FDIC's motion for summary judgment in an action on a guaranty of several notes the FDIC acquired from a failed bank. When the guaranty was signed, the bank orally agreed with the guarantor that the guaranty would last only until the maker secured financing to pay off the notes. When the bank failed, the purpose of the guaranty had long since passed. But the bank had failed to return the guaranty to the guarantor.

The district court held that section 1823(e) rendered the oral agreement between the bank and the guarantor invalid as against the FDIC. We agree and affirm.

I. *Background Facts and Proceedings.*

In 1977 Franklin W. Thies owed Citizens State Bank at Iowa Falls (bank) money on several promissory notes. Franklin arranged for a loan from the Farmers Home Administration (FmHA) to repay the notes

and several other obligations. The notes at that time totaled $90,000.

Franklin and Donald Ruigh, vice president of the bank and the person in charge of Franklin's account, executed affidavits supporting a resistance to the summary judgment motion. According to Franklin's affidavit, the bank requested that his mother, Taldine Thies, guarantee the notes until the FmHA loan came through. This process would take several months. Ruigh's affidavit corroborated this statement.

On August 27, 1977, Franklin and Taldine met with Ruigh at the bank. In his affidavit Ruigh states:

I explained to [Taldine] that our bank was requesting the guarantee of Franklin's debt just until FmHA proceeds were received. With that understanding, she signed the guaranty.

Franklin's affidavit states that Ruigh told his mother the guaranty would be destroyed or returned to her when the FmHA proceeds were received.

The guaranty, by its terms, allowed Franklin to "obtain credit, from time to time" and specified "(no limit)" as to dollar amounts. Franklin's affidavit, however, states that the words "(no limit)" had not been typed in the guaranty when Taldine signed it.

The FmHA proceeds were received in February 1978. According to Franklin's and Ruigh's affidavits, Franklin repaid the loans from those proceeds with the exception of $8600. This remainder was paid within ninety days. Apparently, the guaranty was never removed from the bank files. Ruigh's affidavit indicates this was an oversight.

In 1982 Taldine went into a nursing home and was put under a conservatorship. Taldine's capacity, however, is not raised as an issue in this case.

In 1984, 1985, and 1986, Franklin borrowed more money from the bank. The bank records reflect that Franklin pledged collateral at the time the money was borrowed. Ruigh's and Franklin's affidavits state the loans were not made on the strength of Taldine's guaranty. The affi-

davits further state that the bank did not notify Taldine of these new loans because the guaranty was satisfied in 1978.

Taldine died in April 1986. On July 17, 1986, the bank filed a claim in probate for $414,042.18 plus interest. The claim was based on Taldine's guaranty.

On July 31, 1986, the Iowa superintendent of banking determined that the bank was insolvent. The superintendent ordered the bank closed, took possession of its assets, and tendered to the FDIC an appointment as receiver of the bank. The FDIC accepted the appointment.

An official of the FDIC executed an affidavit in which he stated that the FDIC purchased certain assets of the bank. The affidavit further stated these assets included Franklin's promissory notes and Taldine's guaranty. According to this affidavit the guaranty was still in the active files of the bank when the FDIC took over its assets.

According to a stipulation of facts, Franklin defaulted on the notes in April 1987. Franklin and his wife filed a chapter 12 bankruptcy. The bankruptcy plan states that Franklin and his wife will pay the FDIC $184,824. Even with a credit for this amount, there still remains in excess of $200,000 left on Franklin's indebtedness. Taldine's estate is valued at about $185,000. If the FDIC's claim as to Taldine's guaranty stands up, this means the estate is wiped out. The beneficiaries of the estate are Taldine's children.

On January 11, 1988, the district court substituted the FDIC for the bank in the estate proceeding. The FDIC moved for summary judgment on July 13, 1988. The executor resisted with the supporting affidavits of Franklin and Ruigh. The executor asserted these affidavits generated the following fact question: whether Taldine's guaranty had been satisfied and was no longer an asset of the bank when the FDIC took over. The district court denied the motion. The court held that the affidavits had indeed generated a fact question on this issue.

The FDIC resubmitted its motion for summary judgment. It also filed an appli-

cation for adjudication of law points. The district court granted the motion in September 1989. The court applied 12 U.S.C. section 1823(e), finding that the

> executor's intention to offer evidence concerning an oral agreement, the terms of which provided that the guaranty signed by Taldine Thies was to last only so long as was needed for Franklin Thies to secure financing from the FmHA does not meet the requirements of section 1823(e).

The district court declined to rule on the FDIC's application for adjudication of law points as unnecessary in light of its ruling.

The executor appealed, raising one issue: whether 12 U.S.C. section 1823(e) precludes the defense that the guaranty had been satisfied and was not an asset the FDIC purchased from the bank.

## II. *The Requirements of 12 U.S.C. Section 1823(e).*

Section 12 U.S.C. section 1823(e) provides:

> No agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the [FDIC] unless such agreement
>
> (1) shall be in writing,
>
> (2) shall have been executed by the bank and a person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank,
>
> (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (4) shall have been, continuously, from the time of its execution, an official record of the bank.

The executor concedes there is no written agreement that the guaranty would only be in effect until the FmHA loan came through. The executor also concedes there is no approval of such an agreement reflected in the minutes of the bank's board of directors or its loan committee.

So we see the issue the bank raises as a legal one. The issue involves whether we strictly apply the requirements of section 1823(e) to the undisputed facts. In these circumstances, summary judgment is appropriate. *See Junkins v. Branstad,* 448 N.W.2d 480, 482 (Iowa 1989).

## III. *The Executor's Cases.*

We agree with the executor that the issue is one of first impression for us. The executor concedes there is authority for the proposition that 12 U.S.C. section 1823(e) makes the oral understanding invalid as against the FDIC. But the executor points to opposing authority and asks us to side with that authority. The executor cites four cases in support of its position.

A. *Nemecek.* In the first case a bank sued to recover judgment against several makers on a note that was in default. *FDIC v. Nemecek,* 641 F.Supp. 740 (D.Kan. 1986) (declined to follow in *FDIC v. Cover,* 714 F.Supp. 455 (D.Kan.1988)). The note was secured by a mortgage on certain land. The bank and the defendants, through their lawyers, agreed that the bank would accept quitclaim deeds for the mortgaged property in lieu of foreclosure. The defendants then delivered the deeds to the bank's lawyers. Before the bank's lawyers could deliver the deeds to the bank and before the bank could sign a formal release, the bank failed and was closed. *Id.* at 741.

The FDIC was appointed receiver and was substituted as plaintiff in the bank's lawsuit. The defendants moved to enforce the settlement agreement. The FDIC replied, arguing that the motion should be denied because of 12 U.S.C. section 1823(e). *Id.*

The district court granted the defendants' motion. The court focused on the words "any asset acquired by it" in section 1823(e). Simply put, the court reasoned that before section 1823(e) could apply, the FDIC must first have acquired an asset. The court concluded that the section does not apply when no asset exists. *Id.* at 742.

The court found that the parties had reached an accord and satisfaction before

the FDIC acquired any asset of the bank. The court reasoned that in these circumstances the defendants' note was canceled and so was not an asset that the FDIC acquired. *Id.* In short, 12 U.S.C. section 1823(e) did not apply.

B. *Langley.* A year after *Nemecek* was decided, the Supreme Court considered section 1823(e) in the second of the four cases upon which the executor relies. *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). The defendants borrowed money from a bank to purchase land. In consideration for the loan, the defendants signed a note, mortgage, and personal guaranties. The defendants defaulted and the bank sued them. *Id.* at 88, 108 S.Ct. at 399, 98 L.Ed.2d at 345.

The defendants alleged as a defense that the bank had procured the note by misrepresenting the amount of land purchased, the amount of mineral acres involved, and the outstanding mineral leases on the property. Nothing about these representations appeared in the documents the defendant signed, nor in the bank's records, nor in the minutes of the bank's board of directors or loan committee. *Id.* at 89, 108 S.Ct. at 400, 98 L.Ed.2d at 345.

The bank subsequently failed and was closed. The FDIC was appointed receiver and undertook financing of a purchase and assumption transaction. *See* 12 U.S.C. § 1823(c)(2). All the liabilities and most of the assets were assumed by another bank. The FDIC paid the assuming bank the difference between the liabilities assumed and the value of the assets. In consideration for the payment the FDIC received, among other things, the defendants' note. *Langley*, 484 U.S. at 89, 108 S.Ct. at 400, 98 L.Ed.2d at 345–46.

The FDIC, which was substituted as plaintiff in the lawsuit, moved for summary judgment. The district court granted it. The circuit court affirmed. It concluded that the word "agreement" in section 1823(e) encompassed the kinds of material terms or warranties asserted by the defendants in their misrepresentation defenses. Because the requirements of section 1823(e) were not met, the court further concluded these defenses were barred. *Id.* at 89–90, 108 S.Ct. at 400, 98 L.Ed.2d at 346.

The Supreme Court agreed with the court of appeals' reasoning. The Court concluded that the bank "had and could transfer to the FDIC voidable title, which is enough to constitute 'title or interest' in the note." *Id.* at 94, 108 S.Ct. at 402, 98 L.Ed.2d at 348.

The executor here relies on the Court's dictum that if the instrument is entirely void rather than voidable, the FDIC would have purchased nothing. *See id.* at 93–94, 108 S.Ct. at 402, 98 L.Ed.2d at 348. From this, the executor reasons that Taldine's guaranty, once it had been fully fulfilled, was void.

C. *Commerce Federal Savings Bank.* Two years after *Langley* was decided, the sixth circuit decided the third case of importance to the executor. *Commerce Fed. Sav. Bank v. FDIC*, 872 F.2d 1240 (6th Cir.1989). An individual and a corporation owned real estate. The two borrowed $125,000 from a bank. As security for the loan, the borrowers executed a deed of trust covering the real estate. The deed of trust contained a dragnet clause covering future borrowings of the individual and the corporation. The deed of trust also had a provision that the trust would be extinguished if all outstanding debts encumbering the instrument were paid. *Id.* at 1241–42.

The balance of the $125,000 was paid, and the bank orally agreed to release the deed of trust. Meanwhile the bank failed. The FDIC was appointed receiver. The FDIC acquired various assets of the failed bank, including the deed of trust and a second promissory note for $50,000 executed by the corporation. The FDIC refused to release the deed of trust, contending that the $50,000 obligation was secured by the dragnet clause in the deed of trust. *Id.* at 1242–43.

In a suit seeking a release of the trust deed, the district court determined that the dragnet clause applied to the $50,000 note. The bank had orally agreed to cancel the deed of trust, which included the dragnet

clause, in return for payment of the balance due on the $125,000. The court applied section 1823(e). It held that the oral agreement was not enforceable against the FDIC. *Id.* at 1243–44.

The sixth circuit reversed, holding that the deed of trust was not an asset acquired by the FDIC. The court concluded that the original $125,000 indebtedness had been satisfied before the FDIC's purchase. *Id.* at 1245.

The court found that the FDIC had not proven the $50,000 note had existed before the payment of the outstanding balance on the original note. The court held that the FDIC had failed to rebut the presumption that the deed of trust was extinguished. The court concluded, therefore, that the FDIC failed to prove the deed of trust was an "asset" at the time the FDIC purchased the assets of the failed bank. *Id.* at 1245–46.

D. *Prann.* In the last case of importance to the executor, a subsequent developer of land assumed the original developer's debt to the bank that financed the development. *FDIC v. Prann,* 694 F.Supp. 1027 (D.P.R.1988). Later the bank loaned the subsequent developer additional money to complete the project. The bank permitted the subsequent developer to credit a portion of the loan to pay off the original developer's debt to the bank. *Id.* at 1033.

The bank failed. The FDIC took over the bank's assets and sued the original developer. The FDIC took the position that section 1823(e) applied to the credit because no cash had exchanged hands. There had only been a paper or a book entry on the bank's books. *Id.* at 1029, 1033.

The federal district court rejected the FDIC's argument as specious. Relying on *Nemecek* the district court held that section 1823(e) did not apply to the original developer's debt. The court reasoned that the debt which formed the basis of the FDIC claim had been satisfied before the FDIC acquired the bank's assets. *Id.* at 1037–38.

IV. *The Executor's Theory.*

The executor analogizes to these four cases. She contends that when Franklin obtained his loan from the FmHA and the bank was paid in full, the guaranty was satisfied. At that point, according to the executor, the guaranty was void and was nothing more than a scrap of paper in the bank's files. So it follows that section 1823(e) does not apply because the guaranty was satisfied before the FDIC acquired the bank's assets.

V. *The FDIC's Cases.*

The FDIC, we think, distinguishes the executor's cases. In addition it cites persuasive authority for its position that section 1823(e) does apply. In an amended brief the FDIC cites three cases from the eighth circuit in support of its position: *FDIC v. Virginia Crossings Partnerships,* 909 F.2d 306 (8th Cir.1990); *FDIC v. Krause,* 904 F.2d 463 (8th Cir.1990); *FDIC v. Newhart,* 892 F.2d 47 (8th Cir.1989). In *Krause* the court rejected the same argument the executor raises here. In oral arguments the executor's attorney virtually conceded that *Krause* would control but argues that we should not follow that case because it lacks analysis.

The executor's argument that the guaranty was satisfied long before the FDIC acquired the assets of the bank is appealing and tempting. It also avoids a harsh and seemingly inequitable result. Nevertheless we choose to follow the eighth circuit court of appeals' interpretation of the federal statute as set out in these three cases. *See FDIC v. Oehlert,* 252 N.W.2d 728, 730 (Iowa 1977) (holding that federal law rather than state law controls in determining rights of FDIC concerning assets it acquires from a failed bank). We do so because of the important policy reasons underlying section 1823(e).

A. *Virginia Crossings.* In *Virginia Crossings* two individuals signed personal guaranties of a note to a partnership. The guaranties were limited to $210,000. An accompanying memorandum provided that these guaranties would be limited to a joint guaranty of $42,000 when the partnership

obtained permanent financing. However, when the permanent financing came through, no lower limit guaranties were ever executed by the guarantors. *Virginia Crossings*, 909 F.2d at 307–08.

Similar to what happened here, the $210,-000 guaranties were in the bank files when the bank was declared insolvent. The FDIC acquired in its corporate capacity the assets of the bank, including the partnership notes and the $210,000 guaranties. The FDIC sued the partnership on the notes and the guarantors on the guaranties. *Id.* at 308.

The guarantors claimed the memorandum terminated their $210,000 guaranties when the permanent financing came through. The district court granted the FDIC's summary judgment motion, determining that section 1823(e) controlled. *Id.* at 308–09.

The eighth circuit court of appeals explained the purpose underlying 12 U.S.C. section 1823(e):

> In *Langley* [*v. FDIC*], the Court explained that [12 U.S.C. section 1823(e)] was designed with two purposes in mind: first, "to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets"; and, second "[to] ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure." In enacting this "categorical recording scheme," Congress "opted for the certainty of the requirements set forth in § 1823(e)."

*Id.* at 309 (citing *Langley*, 484 U.S. at 91, 92, 95, 108 S.Ct. at 401, 403, 98 L.Ed.2d at 347, 348) (citations omitted).

The eighth circuit court of appeals went on to hold that the earlier memorandum, which lowered the guaranties to $42,000, failed to meet the contemporaneous execution requirement of section 1823(e). The memorandum had not been executed by the bank and the two guarantors contemporaneously with the making of the note. *Id.* at 309–10. The court rejected a substantial compliance argument. It strictly applied the statute:

> In view of the 'categorical' requirements of [section] 1823(e), we are constrained to reject this assertion.

*Id.* at 309.

B. *Krause*. Interestingly, Citizens State Bank was also involved in *Krause*. There, three individuals executed promissory notes to the bank. The FDIC, as in this case, purchased the notes in their corporate capacity. The FDIC sued on the notes. The individuals claimed the debts had been paid and settled pursuant to a settlement agreement with the bank's president several months before the bank failed. *Krause*, 904 F.2d at 464.

The FDIC moved for summary judgment. It argued that under section 1823(e) any approval of the agreement was not reflected in the minutes of the board of directors or loan committee. It also argued the original promissory notes acquired by the FDIC did not bear the "paid" notation appearing on the individual's copies. *Id.* at 464–65.

The individuals resisted on two grounds. First, the board knew and authorized the agreement. Any failure to record the agreement in the minutes or to mark the original notes "paid" was inadvertent or a scrivener's error. Second, section 1823(e) applies only to an "asset acquired" by the FDIC. Here, the notes were not such assets because they were the subject of an accord and satisfaction before the FDIC acquired any assets from the bank. The district court granted the motion. *Id.* at 465.

Rejecting the first ground, the circuit court of appeals said:

> If section 1823(e) applies (and as discussed below, we hold that it does), it is immaterial whether the bank's board actually approved the settlement if that approval was not reflected in the minutes. As to this second issue, we think the bank's president's affidavit, upon which the [individuals] rely, is not sufficient to establish a factual dispute....

*Id.* at 466.

And rejecting the second ground, the court said:

We believe it is unnecessary for this court to determine whether the settlement agreement constituted accord and satisfaction under Iowa law. There is no genuine issue as to the material facts that at the time the FDIC took over the bank, the original promissory notes were in the bank's files, the notes bore no notation that they had been paid, and the minutes of neither the board of directors nor the loan committee indicated any settlement agreement.

This court recognizes that "the FDIC must be able to rely on the records of the failed bank," and such reliance would be defeated "if 'seemingly unqualified notes [were] subject to undisclosed conditions.'" In view of the purpose of section 1823(e) to permit this reliance, *we believe that the section's requirements must be applied to the agreement purportedly settling the promissory notes which were found in the bank's files. The evidence shows the agreement failed to meet at least one of the requirements—that approval by · the board of directors or loan committee be reflected in the minutes of the board or committee.*

*Id.* (citations omitted) (emphasis added). The court went on to affirm the district court's summary judgment ruling. *Id.*

VI. *Recent Authority.*

A. *Kasal.* In a very recent case, the eighth circuit court of appeals revisited the issue on facts similar to *Krause* and reached the same result. *See FDIC v. Kasal*, 913 F.2d 487, 490 (8th Cir.1990) (Heany, J., dissenting on other grounds). The court relied on its rationale in *Krause. Id.* at 490. In addition the court cited in support of its holding the *D'Oench, Duhme* common law doctrine. *Id.* at 491 (citing *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 456–62, 62 S.Ct. 676, 678–82, 86 L.Ed. 956, 961–65 (1942)) (debtor is estopped from asserting secret side agreements regarding the instrument in question). *See also Oehlert*, 252 N.W.2d at 730–32 (applying common law doctrine of *D'Oench, Duhme* ).

Interestingly, the court addressed a contention that several commentators have recently criticized the broad reach of section 1823(e) and the *D'Oench, Duhme* doctrine. *Kasal*, 913 F.2d at 492; *see, e.g.*, Note, *Borrower Beware: D'Oench, Duhme and Section 1823 Overprotect the Insurer When Banks Fail*, 62 S.Cal.L.Rev. 253, 318–19 (1988) ("courts have lost sight of the equitable roots of ... the *D'Oench, Duhme* doctrine ... and have expanded greatly the protection afforded the bank insurer"); *Langley v. FDIC: FDIC Superpowers—A License to Commit Fraud*, 1989 Ann.Rev. Banking L. 558, 580 (describing *Langley* as "endors[ing] a policy redistributing the cost of bank failures from the taxpayers to individuals whose liability may be significant").

Acknowledging the result in the case may appear harsh or inequitable, the court felt it was "constrained by both the statute and federal common law to reject appellant's defense of payment, since that defense is based upon secret unwritten side agreements never entered in the records of the bank." *Kasal*, 913 F.2d at 492.

B. *Willow Tree.* We also have had occasion to consider section 1823(e) and the *D'Oench, Duhme* doctrine codified in that section. *See Willow Tree Investments, Inc. v. Wagner*, 453 N.W.2d 641, 642–44 (Iowa 1990). In *Willow Tree* the FDIC · purchased from a failed bank a note and mortgage covering farmland. The FDIC sold the note and mortgage to a third party who sued the makers of the note. The makers claimed they had an oral agreement with the bank. According to the makers they agreed to sell their farmland except for the homestead. Any proceeds from the sale would serve as a complete satisfaction of the note, leaving the homestead free and clear of the mortgage. The third party purchaser did not dispute this agreement but asserted that section 1823(e) protected the third party against the agreement. The district court agreed and sustained the third party's motion for summary judgment. *Id.* at 641–42.

We agreed with the district court's ruling. We noted the defendants conceded that their oral agreement did not meet the requirements of section 1823(e). The only

issue was whether the protection afforded to the FDIC against such agreements extended to third-party purchasers from the FDIC. *Id.* at 643–44. We thought that a "failure to extend [such] protection would undermine the statutory purposes of facilitating the continuance of normal banking operations and protecting the depositors and creditors of insolvent banks." *Id.* at 644. We think this holding is consistent with the reasoning and result reached by the eighth circuit court of appeals in *Virginia Crossings, Krause,* and *Kasal.*

### VII. *Disposition.*

Here the parties stipulated that the alleged understanding between Taldine and the bank failed to meet any one of the four requirements in section 1823(e). So that understanding has no validity against the FDIC. Because we conclude the district court correctly sustained the FDIC's motion for summary judgment, we affirm its ruling.

AFFIRMED.