A92A0268. CHERRY et al. v. WARD.
(420 SE2d 763)

SOGNIER, Chief Judge.

William Ward brought suit against B. H. Cherry, Jr. and Cherry Construction Company ("CCC") seeking damages for negligent construction, breach of contract, and passive concealment of defects in a home he had purchased. After the trial court granted a directed verdict in favor of Cherry and CCC on the passive concealment claim, the jury returned a verdict in favor of Ward on the remaining claims. The trial court denied Cherry and CCC's motion for a new trial, and they appeal.

1. Appellant Cherry contends the trial court erred by failing to direct a verdict in favor of him individually because CCC, not Cherry, executed the sales contract and constructed appellee's house. Cherry is president and sole stockholder of CCC. "A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." (Citations and punctuation omitted.) *Heyde v. Xtraman, Inc.*, 199 Ga. App. 303, 305-306 (2) (404 SE2d 607) (1991).

(a) We find no error in the trial court's denial of Cherry's motion for directed verdict as to appellee's claim of negligent construction. Appellee asserted that the house he purchased had serious water leakage in the basement as a result of the negligent manner in which the house was constructed. Actionable negligence for purposes of a negligent construction claim "is measured by and manifested by a failure to adhere to the established and accepted standards of professional care or conduct in the community, which defect the builder knew or should have known by the exercise of ordinary care. [Cits.]" *Williams v. Runion*, 173 Ga. App. 54, 57 (325 SE2d 441) (1984). Appellee's expert witness, Ken Elkins, a professional engineer in the discipline of civil and structural engineering, testified that the builder of the home failed to build the house in accordance with applicable building codes adopted by Fulton County, the situs of the house. Elkins testified, inter alia, that he had determined from a visual inspection that the fill around the house had not been sufficiently compacted; the concrete in the foundation walls had been improperly poured, leading to the formation of cold joints; in turn the failure to reinforce and waterproof the cold joint areas properly had led to water leakage in the basement of the house; the house was not bolted to a foundation wall; and that each of these items constituted a violation of code require-

ments. From this evidence, the jury was authorized to conclude that appellee's home was not constructed in accordance with the code and that this was the proximate cause of the damage to the home. See id. at 58 (1), 59 (4).

Cherry argues that this evidence of negligent construction does not pertain to him because CCC, not he, was the builder of the house. We agree with Cherry that the evidence establishes he did not construct the house in his individual capacity. However, it is well established that "[a]n officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor, [and] an officer of a corporation who takes no part in the commission of a tort committed by the corporation is not personally liable unless he specifically directed the particular act to be done or participated or co-operated therein." (Punctuation and citations omitted.) *Smith v. Hawks*, 182 Ga. App. 379, 385 (4) (355 SE2d 669) (1987). See generally 3A W. Fletcher Cyclopedia of the Law of Private Corps., § 1137 (rev. perm. ed. 1986). At trial, Cherry acknowledged that he was personally involved in the construction of appellee's home on a daily basis, personally supervised the construction "from start to finish," and worked as the "project foreman" for the job. Given this testimony and the expert testimony regarding the extensive and obvious particulars in which the house failed to comport with applicable building code requirements, there is some evidence from which the jury could have found that Cherry, as an officer in CCC, was personally liable for the negligent construction of appellee's home because he specifically directed the manner in which the house was constructed or participated or cooperated in its negligent construction. See *American Game &c. Svc. v. Knighton*, 178 Ga. App. 745, 746 (1) (344 SE2d 717) (1986). Accordingly, we are satisfied that the trial court properly denied the motion for directed verdict as to the negligence count. See generally *Williams*, supra at 58 (1).

(b) We agree with Cherry that the trial court erred by denying his motion for directed verdict as to appellee's claim of breach of contract. Appellee acknowledged at trial that the sales contract was signed by Cherry in his capacity as president of CCC. Although the evidence was controverted, there was evidence from which the jury could conclude that Cherry, in his individual capacity, signed an addendum to the sales contract, in which were set forth stipulations of additional matters appellee required to be performed on the house. Appellee testified he requested that Cherry sign the addendum individually because he "felt uncomfortable" about the many items remaining to be repaired at the home and required Cherry's personal assurance that the repairs would be made. From this evidence, the jury was authorized to find that Cherry agreed to oversee personally the performance of the stipulations in the addendum in order to in-

duce appellee to execute the sales contract, therefore binding Cherry to the proper performance of these matters. See OCGA § 13-3-44 (a). However, the evidence at trial established that none of the difficulties upon which appellee based his breach of contract claim, i.e., the failure to take the steps necessary to prevent water seepage in the basement, arose out of Cherry's individual performance of the special stipulations in the addendum, but instead arose out of breach of a stipulation within the body of the sales contract itself to be performed by CCC. Our review of the stipulations in the addendum reveals that the only provision remotely related to appellee's problems required Cherry to caulk the cracks in the concrete on the driveway and garage floor. Since appellee's evidence established that it was the settling of the garage floor and the improper installation of the driveway that created or exacerbated appellee's problems, rather than any improper caulking of the cracks in the concrete (which were merely symptoms of the underlying problem), there is nothing in the record to establish that Cherry breached the contract on which he was individually liable.

Accordingly, while the evidence reflects that Cherry could have been found liable to appellee for a breach of contract arising out of the matters he promised to perform personally, the evidence is uncontroverted that Cherry was not personally obligated on the contract executed by CCC and appellee, the breach of which was the subject matter of appellee's suit. Therefore, Cherry was entitled to a directed verdict and the trial court erred by denying his motion. See generally *Commonwealth Land Title Ins. Co. v. Miller*, 195 Ga. App. 830, 833 (395 SE2d 243) (1990).

(c) The verdict returned by the jury awarded appellee $30,000 against both appellants. Although the form allowed the jury to select which, if either, appellant to hold liable, the form did not allow the jury to distinguish between the negligent construction claim and the breach of contract claim. Appellants objected to the form of the jury verdict on this ground and enumerate as error the trial court's failure to provide for separate jury consideration of the two causes of action. Because of the form used for the verdict, we are unable to determine whether the jury's verdict against both appellants was based upon a proper finding that they were liable on the negligent construction claim or whether, due to the trial court's erroneous denial of Cherry's motion for directed verdict on the breach of contract claim, the jury incorrectly returned a verdict against both appellants in favor of appellee on the breach of contract claim. "Since the jury found a general verdict for [appellee] against both [appellants], the verdict cannot stand for the reason that this court cannot determine whether the verdict was entered upon a proper basis. [Cits.]" *Georgia Power Co. v. Busbin*, 242 Ga. 612, 616-617 (8) (250 SE2d 442) (1978). Therefore,

the judgment of the trial court must be reversed. Id.

2. Appellants contend the trial court erred by allowing Elkins to testify whether in his opinion a foundation drain had existed because his opinion was not based upon facts known to him or placed in evidence by other witnesses. Our review of the transcript reveals that Elkins, whose expertise was established by appellee, based his opinion on his personal observation of water marks on the basement wall of the house. Accordingly, should the same basis be introduced for this testimony upon retrial, the trial court would not err by admitting such testimony. See generally *Erwin v. Gold Kist*, 146 Ga. App. 372, 373 (246 SE2d 404) (1978).

3. It is not necessary to address appellants' remaining enumeration because, even assuming proper objection was made below, the issues arising out of appellee's passive concealment and fraud claims will not present themselves upon retrial.

4. Appellee's motion for imposition of damages for frivolous appeal is denied.

*Judgment reversed. McMurray, P. J., and Cooper, J., concur.*

DECIDED JUNE 23, 1992 —
RECONSIDERATION DENIED JULY 8, 1992 — 

*Billy W. Crecelius, Jr.,* for appellants.
*I. Allen Meadors,* for appellee.