Esther L. HAUPT, Executor
of the Estate of Taldine
Thies, Appellant,

v.

Richard E. MILLER, William A. Dickey,
William Hurd and Donald E. Ruigh,
Appellees.

No. 92–1790.

Supreme Court of Iowa.

April 20, 1994.

Rehearing Denied May 25, 1994.

David L. Charles and J. Russell Hixson of Gamble & Davis, P.C., Des Moines, for appellant.

John P. Whitesell of the Whitesell Law Office, Iowa Falls, for appellees Richard Miller and Donald Ruigh.

John F. Lorentzen and Thomas M. Zurek of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for appellee William Hurd.

Jerold B. Oliver and G. Stephen Walters of Jordan, Oliver & Walters, Winterset, for appellee William A. Dickey.

SNELL, Justice.

I. This appeal centers around the petition of Esther Haupt (Haupt), executor of the estate of Taldine Thies, who alleged several causes of action in tort against Richard Miller (Miller), William Dickey (Dickey), William Hurd (Hurd), and Donald Ruigh (Ruigh), former officers and directors of Citizens State Bank (CSB). The tort claims all arise out of a loan guarantee transaction between Taldine Thies (Taldine) and CSB, the bank for which each defendant formerly worked. The district court granted defendants' motions to dismiss Haupt's claims of negligent breach of contract asserted against Ruigh, Dickey, and Hurd. The district court also dismissed Haupt's claims of negligent misrepresentation asserted against Ruigh and Miller. Haupt's appeal to this court raises issues of first impression regarding the liability of corporate officers and directors for representations made in the course of their banking business. We reverse and remand.

II. Appellate review of rulings on motions to dismiss is limited. *Berger v. General United Group, Inc.*, 268 N.W.2d 630, 634 (Iowa 1978). This court cannot sustain a motion to dismiss on grounds not asserted in the district court. *Jones v. Madison County*, 492 N.W.2d 690, 693–94 (Iowa 1992). In a motion to dismiss the movant "admits the well-pleaded facts in the pleading assailed for the purpose of testing their legal sufficiency." *Id.* Thus, our decision to overrule or sustain a motion to dismiss must rest on legal grounds. In light of our standard of review in this case, we accept as true the allegations set forth in Haupt's petition. *See Board of Supervisors v. Standard Appliance Co.*, 249 Iowa 438, 440, 87 N.W.2d 459, 460–61 (1958).

III. In August 1977 Franklin Thies (Franklin) owed CSB $90,000. Franklin arranged to borrow funds from the Farmers Home Administration (FmHA) to repay his debt to CSB. Securing the FmHA loan would take a number of months. Realizing this, Ruigh, then the vice president of CSB, requested Taldine Thies, Franklin's mother, to execute a written guarantee of Franklin's $90,000 debt. Prior to completing the transaction, Ruigh orally assured Taldine that she was guaranteeing only $90,000 worth of debt. However, this limit was not written into the guarantee document which stated that the guarantee had no dollar limit. Ruigh also promised Taldine prior to executing the guarantee, that the written guarantee instrument would be returned to her or destroyed when Franklin's $90,000 debt was paid.

In February 1978 Franklin received the FmHA loan. He paid off the $90,000 debt to CSB shortly thereafter. The written guarantee was neither returned to Taldine nor destroyed. On April 17, 1986, Taldine died. On July 16, 1986, CSB's president, defendant Miller, told Haupt that CSB was filing a claim in probate in Taldine's estate in the amount of $414,042.18. Miller relayed this information to Haupt for the purpose of assisting Haupt in the distribution of the estate's assets. CSB then filed the claim based on the written guarantee executed by Taldine. On July 31, 1986, CSB was declared insolvent. The Federal Deposit Insurance Corporation (FDIC) purchased the Thies guarantee to CSB. On November 21, 1990, this court affirmed a district court order sustaining the FDIC's motion for summary judgment against Taldine's estate in the amount of $414,042.18. *See In re Estate of Thies*, 463 N.W.2d 40 (Iowa 1990).

In this sequel to the above-cited case, Haupt sued the CSB officers involved in the above-described guarantee transaction. Haupt sued Ruigh, Hurd, and Dickey on a theory of negligent breach of contract. Haupt also sued Ruigh and Miller for negligent misrepresentation. Further, Haupt sued Ruigh for fraudulent misrepresentation. The defendants all filed motions to dismiss the claims filed against them. The district court dismissed all the claims except the claim for fraudulent misrepresentation against Ruigh.

Ruigh filed a second motion to dismiss on the ground that Haupt's claim for fraudulent misrepresentation was time barred under Iowa Code section 614.4. The district court denied this motion. Haupt filed a motion for interlocutory appeal of the district court's decisions to dismiss her claims based on negligence. We denied this motion. Before taking her appeal to this court on her negligence claims, Haupt dismissed without prejudice her claim for fraudulent misrepresentation against Ruigh.

IV. *General Negligence Principles.*

As a general rule, corporate officers are individually liable to third parties for their torts, even when occurring while they act in their official corporate capacity. *Grefe v. Ross*, 231 N.W.2d 863, 868 (Iowa 1975); *Luther v. National Inv. Co.*, 222 Iowa 305, 308–09, 268 N.W. 589, 590 (1936); *Stambaugh v. Haffa*, 217 Iowa 1161, 1163, 253 N.W. 137, 138 (1934). Our court has upheld the imposition of personal liability against corporate officers in cases involving instances of fraud, or actions for the wrongful conversion of personal property. *See Briggs Transp. Co. v. Starr Sales Co.*, 262 N.W.2d 805, 808–09 (Iowa 1978); *Grefe*, 231 N.W.2d at 868; *Luther*, 222 Iowa at 308–09, 268 N.W. at 590; *Stambaugh*, 217 Iowa at 1163, 253 N.W. at 138. However, there exists a relative dearth of Iowa case law regarding the

extent to which corporate officers are personally liable for their tortious acts.

Haupt contends all of the defendants in this case are individually liable for the torts alleged in her petition regardless of whether they acted within or without the scope of their employment. Defendants contend they are not liable for negligent torts occurring within the scope of their employment. Absent fraud, defendants argue, corporate officers cannot be held individually liable in tort for actions occurring while acting on behalf of a corporate entity. The district court held that only where evidence of fraud exists may individual liability be imposed against corporate officers or directors.

At the outset, it is important to define the precise issue before us. Haupt is not asking this court to "pierce the corporate veil." That doctrine is primarily used to impose personal liability upon the owners, directors, or officers of the corporation attempting to use the corporate entity as an "intermediary to perpetrate fraud or promote injustice." *Briggs Transp.*, 262 N.W.2d at 810. Nor is our analysis in *Unertl v. Bezanson* applicable to our analysis of this case. *Unertl v. Bezanson*, 414 N.W.2d 321 (Iowa 1987). In *Unertl* we said:

> The rule generally followed by the authorities is that a creditor of a corporation may not maintain a personal action at law against its officers or directors who have, by their mismanagement or negligence, committed a wrong against the corporation to the consequent damage of the creditor.

*Unertl*, 414 N.W.2d at 324.

Taldine Thies was not a creditor of CSB. Moreover, Haupt is not alleging injury caused by the commission of a wrong by an officer against CSB. Rather, Haupt alleges the defendants committed a wrong against Taldine Thies, causing her direct loss. The rights of creditors to recover against corporate officers for torts committed by corporate officers against the corporation is a much different legal question than that presented by Haupt in her appeal. *See* 3A William M. Fletcher, *Cyclopedia of the Law of Private Corporations* § 1134, at 265 (1986) [hereinafter Fletcher]; *see also Frances T. v. Village*

*Green Owners Ass'n*, 42 Cal.3d 490, 229 Cal. Rptr. 456, 723 P.2d 573, 581 (1986).

Other jurisdictions have decided that corporate officers can be held personally liable for their negligent acts. *See* Fletcher § 1137, at 276, § 1161, at 370. Many courts, however, posit the existence of liability on a finding of misfeasance or malfeasance, but distinguish nonfeasance of duty. *See e.g., Galie v. RAM Assocs. Management Servs., Inc.,* 757 P.2d 176, 177 (Colo.App.1988) (positing liability on finding of misfeasance); *Mathis v. Yondata Corp.,* 125 Misc.2d 383, 480 N.Y.S.2d 173, 176 (N.Y.Sup.Ct.1984). *See generally* Fletcher § 1161, at 370. The trend among courts is to discard such distinctions, in favor of utilizing a general negligence standard as the test for imposing individual liability against corporate officers for negligent acts committed against third parties. *See Cherry v. Ward,* 204 Ga.App. 833, 420 S.E.2d 763, 765 (1992); *Berry v. Aetna Casualty & Sur. Co.,* 240 So.2d 243, 247 (La.App.1970). *See generally* Fletcher § 1171, at 370–71; *see also Pirtle's Adm'x v. Hargis Bank & Trust Co.,* 241 Ky. 455, 44 S.W.2d 541, 546 (1931); *Hoeverman v. Feldman,* 220 Wis. 557, 265 N.W. 580, 582 (1936).

In 1921 our court noted that status as an agent does not insulate an agent from liability for wrongful acts. *E.H. Emery & Co. v. American Refrigerator Transit Co.,* 193 Iowa 93, 97, 184 N.W. 750, 751 (1921). We said:

> The question of the liability of an agent to a third person for negligence has been frequently before the courts, and there is much confusion and lack of uniformity in the authorities. Cases have frequently arisen where the duty which the agent owed to the public, rather than to an individual, was involved, and liability determined because of such duty. In a general way, it may be said that an agent is liable to third parties for his own tortious acts, the same as any other person. The fact of the agency neither increases nor diminishes such liability.

> In determining the liability of an agent to third parties for tortious acts directly connected with and growing out of the agency, the courts have recognized a distinction between malfeasance, misfeasance,

and nonfeasance; but the line of demarcation has frequently been lost sight of, and reconciliation of the authorities is utterly impossible.

*Id.* at 97, 184 N.W. at 751–52 (citations omitted.) No less difficulty is present now in establishing a line of demarcation despite attempts by the courts since *Emery* was decided.

■ In determining liability of a corporate officer for negligence, it is difficult to logically support a legal distinction that exonerates a corporate officer's act of nonfeasance while exacting retribution for acts of misfeasance or malfeasance. In practice, applying such labels may be more descriptive and thus conclusory than the facts would justify as a difference. Accordingly, we join the modern trend of jurisdictions applying the general negligence standard, rather than predicating individual corporate officer liability for negligence on a prerequisite finding of misfeasance or malfeasance.

## V. *Personal Liability of Corporate Officers.*

■ In addition to applying the general negligence standard, courts generally hold that a corporate officer must take part personally in the commission of the tort to be held personally liable for negligence.

> To maintain a tort claim against a director in his or her personal capacity, a plaintiff must first show that the director specifically authorized, directed or participated in the allegedly tortious conduct.

*Frances T. v. Village Green Owners Ass'n,* 42 Cal.3d 490, 229 Cal.Rptr. 456, 723 P.2d 573, 583–84 (1986); *Cherry,* 420 S.E.2d at 765. *See* William E. Knepper & Dan A. Bailey, *Liability of Corporate Officers and Directors* § 2.11, at 66 (1988) [hereinafter Knepper & Bailey]; 19 C.J.S. *Corporations* § 544 (1990). Liability against a corporate officer normally will not be imposed merely because of performing some general administrative responsibility. *Galloway v. Employers Mut. of Wausau,* 286 So.2d 676, 680 (La.App.1974). This limitation reflects "the oft-stated disinclination to hold an agent personally liable for economic losses when, in the ordinary course of his duties to his own corporation, the agent incidentally harms the pecuniary interests of a third party." *Frances T.,* 229 Cal.Rptr. at 464, 723 P.2d at 581.

■ Nonetheless, the fact that a tort is committed by an officer working under a corporate name makes the individual corporate officer no less culpable for the act than if acting outside the corporate name.

> The legal fiction of the corporation as an independent entity—and the special benefit of limited liability permitted thereby—is intended to insulate stockholders from personal liability for corporate acts and to insulate officers from liability for corporate contracts; the corporate fiction, however, was never intended to insulate officers from liability for their own tortious conduct.

*Frances T.,* 229 Cal.Rptr. at 466, 723 P.2d at 583. We hold corporate officers can be held liable for negligence if they take part personally in the commission of the tort against a third party.

## VI. *Negligent Misrepresentation Pleading.*

■ The district court granted the motions to dismiss filed by each of the four defendants. In reviewing these rulings on motions to dismiss we look to the pleadings to determine if they are so deficient that defendants were deprived of notice of the claims made. We have said:

> Since the advent of notice pleading under Iowa Rule of Civil Procedure 69(a), it is a rare case which will not survive a rule 104(b) motion. As a result, disposition of unmeritorious claims in advance of trial must now ordinarily be accomplished by other pretrial procedures which permit narrowing of the issues and piercing of the bare allegations contained in the petition.

*American Nat'l Bank v. Sivers,* 387 N.W.2d 138, 140 (Iowa 1986).

■ Our court has recognized the tort of negligent misrepresentation. *Beeck v. Kapalis,* 302 N.W.2d 90, 96–97 (Iowa 1981); *Ryan v. Kanne,* 170 N.W.2d 395, 402 (Iowa 1969). In both *Beeck* and *Ryan* we referred to section 552 of the Restatement (Second) of Torts (1977) which details the necessary proof as follows:

One who, in the course of his business, profession or other employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

In defining this tort a differentiation has been made between the person engaged in the business or profession of supplying guidance to others and those commercial transactions where the parties are dealing at arm's length. *See* Alfred Hill, *Damages for Innocent Misrepresentation,* 73 Colum.L.Rev. 679, 688 (1973). We also discussed these concepts in *Meier v. Alfa–Laval, Inc.,* 454 N.W.2d 576, 581 (Iowa 1990). In *Meier,* an action against the manufacturer and dealer of a milking machine system, we held that a negligent misrepresentation action did not lie because there were no facts in the record to show that the dealer was in the business of supplying information contemplated by the Restatement. Our review of the pleadings in the case at bar convinces us that the rationale of *Meier* applies and that the claim of negligent misrepresentation fails to state a cause of action. Accordingly, the motions to dismiss Ruigh and Miller under this asserted cause of action were properly granted.

### VII. *Negligent Breach of Contract Pleading.*

In *Preferred Marketing v. Hawkeye National Life,* 452 N.W.2d 389, 397 (Iowa 1990), we recognized that under some circumstances, breach of a contractual duty may give rise to an independent action in tort. At the same time we rejected the suggestion that every breach of contract gives rise to an action in tort. We said:

Only where a duty recognized by the law of torts exists between the plaintiff and defendant distinct from a duty imposed by the contract will a tort action lie for conduct in breach of the contract. As Prosser stated:

[I]f a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not.

*Id.* (quoting William L. Prosser, *Handbook of the Law of Torts* § 33, at 205 (1st ed. 1941)). *See also* William L. Prosser & W. Page Keeton, *The Law of Torts* § 92, at 656 (5th ed. 1984 & Supp.1988) (maintaining distinction); 57A Am.Jur.2d *Negligence* § 119, at 176 (1989).

The negligence pleaded against defendants Ruigh, Hurd, and Dickey comes from their alleged failure to carry out their duty to destroy or return Taldine's note guarantee agreement after it had been paid. As we found in our first consideration of the facts in this case in *In re Estate of Thies,* it was the presence of the note among the assets of CSB after its insolvency, its acquisition by the Federal Deposit Insurance Corporation, and the automatic application of the federal banking law under 12 U.S.C. section 1823(e) that caused the loss sustained by Taldine's estate. *In re Estate of Thies,* 463 N.W.2d at 40.

We have recognized that negligence is behavior that produces an unreasonable danger of injury to others. *Rinkleff v. Knox,* 375 N.W.2d 262, 265 (Iowa 1985); *Evans v. Howard R. Green Co.,* 231 N.W.2d 907, 913 (Iowa 1975). Because current federal law virtually eliminates factual defenses to guarantee agreements, should they fall into the hands of liquidators, an increased danger is created to the guarantors. Consequently, we believe those persons responsible for the preparation and custody of these documents within the workings of the financial institution have a duty to exercise reasonable care to (1) assure that the writing accurately reflects the true nature of the guarantor's obligation and (2) return the guarantee agreement to the guarantor when that obligation is satisfied.

Although it is not possible to determine at the pleading stage what, if any, participation the various defendants had in this transaction so as to expose them to liability under this general duty, that uncertainty does not allow the sustaining of a

motion to dismiss under rule 104(b). The petition should be construed in the light most favorable to the plaintiff with doubts resolved in that party's favor in ruling on the motion. *Bindel v. Iowa Mfg. Co.,* 197 N.W.2d 552, 555 (Iowa 1972). A motion to dismiss is sustainable only when it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts that could be proved in support of the claims asserted. *Id.* Conceivably, plaintiff can show that any one of the named defendants played a role in this transaction that triggered a duty to handle the Thies guarantee agreement in a more protective manner.

The motions to dismiss the negligence claims against Ruigh, Hurd, and Dickey should have been denied.

We reverse and remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

All Justices concur except TERNUS, J., McGIVERIN, C.J., NEUMAN, and ANDREASEN, JJ., who concur in part and dissent in part.

TERNUS, Justice (concurring in part, dissenting in part).

I agree with the majority's conclusion that the trial court properly dismissed the plaintiff's claims based on the theory of negligent misrepresentation. Any representations made by Ruigh and Miller were made to their commercial "adversary" (Thies) in the course of an arms-length commercial transaction. The tort of negligent misrepresentation is not applicable under these circumstances. *Onita Pacific Corp. v. Trustees of Bronson,* 315 Or. 149, 843 P.2d 890, 897–99 (1992) (representations made during the course of negotiating a real estate development contract were not actionable); 2 Fowler V. Harper et al., *The Law of Torts* § 7.6, at 412–13 (1986) (the tort of negligent misrepresentation is applied principally against those who advise in a nonadversarial capacity).

However, I disagree with the majority's conclusion that a cause of action based on negligence is available to the plaintiff. As the majority concedes, only where a duty exists independently of the contract will a tort action lie for conduct in breach of the contract. *Preferred Mktg. Assocs. Co. v. Hawkeye Nat'l Life Ins. Co.,* 452 N.W.2d 389, 397 (Iowa 1990); *accord* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 92, at 656 (5th ed. 1984) [hereinafter *Prosser & Keeton*]. In other words, "there will be liability in tort for misperformance of a contract whenever there would be liability for gratuitous performance without the contract." *Prosser & Keeton* § 92, at 661. Where the defendant has merely failed to perform the contract, there is usually no tort liability imposed. *Id.* at 660; *accord Redgrave v. Boston Symphony Orchestra Inc.,* 557 F.Supp. 230, 237–38 (D.Mass.1983) (holding that refusal to perform a contract is not a tort).

The majority concludes that a cause of action based on negligence has been stated in this case. Despite a professed adherence to *Preferred Marketing,* the majority does not identify the source of the "general duty" they recognize, nor do they explain how this duty is independent of CSB's contractual duty to destroy or return the guarantee. An examination of the allegations made by the plaintiff reveals no factual basis for the majority's conclusion that an actionable claim of negligence based on the breach of a duty independent of the contract has been stated.

Plaintiff alleges that the defendants "negligently failed to perform the duties *imposed on them under the agreement* between Taldine Thies and Citizens." (Emphasis added.) Plaintiff is clearly relying on the breach of a contractual duty to impose liability on the defendants. Under *Preferred Marketing,* the breach of such a duty does not give rise to tort liability.

An additional flaw in the majority's reasoning is their failure to acknowledge the lack of any personal involvement by Hurd and Dickey in the transaction between Thies and CSB. The only involvement by these defendants alleged by plaintiff takes place after the dispute between CSB and the Thies Estate over the scope of the guarantee arose. Surely such after-the-fact involvement does not give rise to personal tort liability on the

part of the bank employees who happened to be informed of the Estate's position that the guarantee was to have been returned or destroyed.

In summary, the majority fails to state the specific duty any of these defendants had to Thies which was independent of the agreement between Thies and CSB. Additionally, they fail to explain the source of the "general duty" they have found. Finally, the majority cannot point to any allegation in the petition which even suggests that Hurd and Dickey were personally involved in this transaction so as to be held personally liable in tort for the bank's failure to perform its alleged agreement to return or destroy the guarantee.

For all these reasons, I respectfully dissent from the majority's decision that the plaintiff has pleaded a viable claim of negligence against defendants Ruigh, Hurd, and Dickey.

McGIVERIN, C.J., and NEUMAN and ANDREASEN, JJ., join this partial concurrence and partial dissent.