# IN THE SUPREME COURT OF IOWA

No. 21–0098

Submitted March 23, 2022—Filed May 27, 2022

**KENDALL J. MEADE,** Individually and on behalf of all others similarly situated,

Appellee,

vs.

**PETER S. CHRISTIE, STEPHEN A. CRANE, JONATHAN R. FLETCHER,** and **GRETCHEN H. TEGELER,**

Appellants,

and

EMC INSURANCE GROUP, INC., BRUCE G. KELLEY, and EMCC CASUALTY COMPANY,

Defendants.

---

Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Business Specialty Court Judge.

Corporate directors seek interlocutory review of the Iowa Business Specialty Court's denial of their motion to dismiss a shareholder's claims for breach of fiduciary duties. **REVERSED AND REMANDED.**

McDermott, J., delivered the opinion of the court in which all justices joined.

Michael W. Thrall (argued), Mark C. Dickinson, Lynn C. Herndon, and Angel A. West (until withdrawal) of Nyemaster Goode, P.C., Des Moines, for appellants.

Juan Monteverde (argued) of Monteverde & Associates PC, New York, New York, and Gary Dickey of Dickey, Campbell, & Sahag Law Firm, PLC, Des Moines, for appellee.

William C. Brown of Brown, Winick, Graves, Gross and Baskerville, P.L.C., Des Moines, for amici curiae Iowa Association of Business and Industry and the Iowa Business Council.

**McDERMOTT, Justice.**

This appeal involves a shareholder's challenge to a corporate merger involving the purchase of a publicly traded company's shares in what's known as a "going private transaction." The shareholder alleges that the corporation's directors abdicated their fiduciary duties by agreeing to a flawed merger process with the acquirer that resulted in too low a price for the minority shareholders' stock. The corporate directors filed a motion to dismiss the shareholder's claims, invoking statutory director protections—known as "director shield" laws—that prevent holding directors liable for many types of claims for money damages. The Iowa Business Specialty Court rejected the directors' arguments and denied their motion to dismiss. The directors filed an application for interlocutory review, which we granted. This case presents our court's first opportunity to examine Iowa's director shield protections and the procedural requirements that accompany them.

I.

A.

Because this case involves an appeal from the denial of a motion to dismiss, we accept the facts as alleged in the petition as true. *McGill v. Fish*, 790 N.W.2d 113, 116 (Iowa 2010).

Employers Mutual Casualty Company (EMCC) was founded in 1911 in Des Moines as a mutual insurance company. A "mutual" company is owned by its policyholders; a "stock" company, in contrast, is owned by stockholders.

EMCC formed EMC Insurance Group, Inc. (EMCI) in 1974 as a special type of subsidiary called a "downstream subsidiary" that would serve as EMCC's holding company. Under this structure, EMCC, the old insurance company, became a subsidiary of EMCI, the new company. When EMCI became a publicly traded company in 1982, this structure—EMCI serving as a holding company for EMCC—enabled EMCC to access public capital markets as a source of funding for its business while maintaining its status as a policyholder-owned mutual insurance company. All the while, EMCC owned a majority of the shares in EMCI, which meant that EMCC controlled its own holding company. EMCI employed no staff, leased no facilities, and owned no information technology, but instead relied completely on "EMCC's employees, facilities, and information technology to conduct its business."

Bruce Kelley was EMCC's president and CEO and served on its board of directors throughout the events of this case. Kelley was also EMCI's president and CEO. EMCI's shareholders elected its board of directors. Kelley served on EMCI's board of directors (at times relevant to this lawsuit) with four other members: Peter S. Christie, Stephen A. Crane, Jonathan R. Fletcher, and Gretchen H. Tegeler.

In October 2018, EMCC decided to attempt to purchase the publicly traded stock of EMCI that it didn't own, commonly referred to as a "going private transaction." EMCC soon retained investment bank Boenning & Scattergood, Inc., to provide financial analysis and to assist EMCC's board in the going private transaction. On November 15, EMCC sent a nonbinding proposal letter to EMCI's

board offering to purchase the EMCI stock that EMCC didn't already own for $30 per share. The next day, EMCC filed the proposal letter with the Securities and Exchange Commission (SEC) and issued a press release announcing the offer.

After EMCI's board received the proposal letter and EMCC made the offer public, EMCI established a "Special Committee" consisting of its four directors other than Kelley. In December 2018, the Special Committee retained Willkie Farr & Gallagher, LLP, for legal representation. The Special Committee also retained investment bank Sandler O'Neill & Partners, L.P., to act as its financial advisor. In January 2019, the Special Committee instructed Sandler O'Neill to perform a due diligence investigation of EMCI, including requesting business and financial information, and to schedule management meetings to discuss EMCI's business and future.

Meanwhile, EMCC had received an unsolicited proposal from a group of investors proposing a joint venture transaction involving EMCI. EMCC's board of directors unanimously rejected the proposal without notifying EMCI's board. EMCI's Special Committee received notice of the proposal on January 24, about a month after EMCC received it.

The next day, EMCI received notice of a proposal from one of its shareholders, Gregory Shepard, requesting that he be made a candidate for its board of directors and a member of the Special Committee. A few days later, Shepard filed a Schedule 13D (a form required when a person or group acquires more than 5% of a voting class of a company's stock) with the SEC, stating that he owned 5.09% of EMCI's common stock and that he believed EMCI's "common

stock was significantly undervalued." On February 25, the Special Committee decided not to invite Shepard to be a board member of EMCI.

Meanwhile, on January 31, EMCC publicly announced that it would not "consider any alternative merger or transaction involving a third party" that would involve EMCC merging with or into a third party.

On February 22, the Special Committee met with Willkie Farr and Sandler O'Neill and discussed an alternative proposal (prepared by Sandler O'Neill) that would replace certain insurance pooling agreements between EMCI and EMCC. The alternative proposal was presented to EMCC's board in early March. EMCC's senior executives met with the deputy commissioner-supervisor of the Iowa Insurance Division, who informed the executives that the alternative proposal was unlikely to receive regulatory approval. EMCC's board rejected the alternative proposal and kept the $30-per-share proposal on the table.

On March 20, the Special Committee responded to EMCC with a counteroffer of $40 per share of EMCI stock based on financial projections by Sandler O'Neill. On March 25, Shepard sent another letter to the Special Committee raising his concerns about its independence, Kelley's and EMCC's control, and the "gross inadequacy of EMCC's offer," and stating his belief that the fair price was $50 per share.

The Special Committee and EMCC exchanged counteroffers until, on April 20, the Special Committee accepted EMCC's offer to buy out the minority shareholders at $36 per share. The final merger agreement included a "no shop" provision, which prohibited EMCI from soliciting bids from other potential

purchasers. On September 18, EMCI held a special meeting of shareholders to vote on the transaction. A majority of the minority shareholders—that is, a majority of the non-EMCC shareholders—voted to approve the merger at $36 per share. The shareholders were paid cash for their shares the next day and had their shares canceled.

B.

Kendall Meade, the plaintiff in this case, owned shares of EMCI at the time of EMCC's buyout. Meade filed a class action lawsuit on behalf of himself and the other former owners of common stock of EMCI.

The petition alleges three causes of action. Meade's first cause of action, against EMCI's individual directors (Christie, Crane, Fletcher, Tegeler, and Kelley), alleges that the directors breached "fiduciary duties of care, loyalty, good faith, and candor owed to the public shareholders of EMCI." His second cause of action, against EMCC, alleges that EMCC breached fiduciary duties it owed to the minority shareholders of EMCI. And Meade's third cause of action, against EMCI, alleges that EMCI aided and abetted the other defendants' breaches of fiduciary duties.

EMCC, EMCI, and Kelley filed separate motions to dismiss. The four other individual directors (Christie, Crane, Fletcher, and Tegeler) filed a joint motion to dismiss. Each defendant argued that Meade's claims were derivative rather than direct and that, because Meade had failed to comply with the Iowa Code's requirements for bringing derivative claims, Meade's claims must be dismissed. Meade resisted. The business court held that Meade's claims were direct rather

than derivative because the alleged wrongful actions injured the shareholders rather than EMCI, and the shareholders had suffered separate and distinct injuries from EMCI.

The four individual directors further argued that Meade failed to plead around the statutory defenses available to the directors under these circumstances. The business court rejected this argument, reasoning that Iowa is a notice pleading state and that Meade's allegations satisfied the pleading standard set forth in the statute in any event, and denied the motion.

The business court granted Kelley's, EMCC's, and EMCI's motions to dismiss. Those issues are not before us on this appeal. The only defendants not dismissed by the business court were the EMCI directors other than Kelley: Christie, Crane, Fletcher, and Tegeler. These four defendants (whom for simplicity we will refer to simply as "the directors" in this opinion even though Kelley isn't included among them) filed an application for interlocutory appeal. A week later, the directors filed an answer denying liability. We granted the application and stayed further proceedings in the case.

II.

The directors in this appeal raise two issues: (1) that Meade failed to affirmatively plead facts showing that Iowa's director shield statute, Iowa Code § 490.831 (2019), did not protect the directors against his claims; and (2) that Meade's claims were derivative, not direct, and thus could not be brought unless Meade had complied with our statutory requirements for derivative proceedings,

*id.* §§ 490.740–.747. A finding in the directors' favor on either issue would entitle them to dismissal from this case.

We review a district court's ruling on a motion to dismiss to correct legal error. *Mueller v. Wellmark, Inc.,* 818 N.W.2d 244, 253 (Iowa 2012). A motion to dismiss challenges a petition's legal sufficiency. *Shumate v. Drake Univ.,* 846 N.W.2d 503, 507 (Iowa 2014). In ruling on a motion to dismiss, the court considers only "the contents of the petition and matters of which the court can take judicial notice." *Southard v. Visa U.S.A. Inc.,* 734 N.W.2d 192, 194 (Iowa 2007). In ruling on a motion to dismiss, the court accepts the facts alleged in the petition as true, *McGill,* 790 N.W.2d at 116, and views the allegations in the light most favorable to the plaintiff, *Haupt v. Miller,* 514 N.W.2d 905, 911 (Iowa 1994) (en banc). We may dismiss a claim "only if the petition shows no right of recovery under any state of the facts." *Southard,* 734 N.W.2d at 194 (quoting *Comes v. Microsoft Corp.,* 646 N.W.2d 440, 442 (Iowa 2002)).

The parties generally agree that this standard of review applies to the question of whether Meade's claims are direct or derivative. But they disagree on whether this standard applies to claims that trigger enhanced pleading requirements under Iowa's director shield statute. Although the directors contend that the business court's ruling should be reversed even under the typical dismissal standard, the directors argue that the unique protections afforded directors under the director shield statute require us to apply a "plausibility" standard in evaluating the claims. Because this question largely merges with the parties' arguments on the scope and application of the director

shield statute, we'll analyze this issue as part of our substantive analysis of that statute.

III.

A.

Corporate directors in Iowa must adhere to "standards of conduct" that require directors to discharge their duties (1) in good faith, and (2) in a manner that the director reasonably believes to be in the best interests of the corporation. Iowa Code § 490.830(1)(*a*)–(*b*). Directors also, "when becoming informed in connection with their decision-making function or devoting attention to their oversight function, shall discharge their duties with the care that a person in a like position would reasonably believe appropriate under similar circumstances." *Id.* § 490.830(2). These statutory duties generally fall within one of two broad categories of fiduciary duties—a duty of care and a duty of loyalty—that we've applied to corporate directors under earlier versions of the Iowa Business Corporation Act. *See* 6 Matthew G. Doré, *Iowa Practice Series: Business Organizations* § 28:3, Westlaw (database updated Nov. 2021) [hereinafter Doré]; *see also Cookies Food Prods., Inc. v. Lakes Warehouse Distrib., Inc.*, 430 N.W.2d 447, 451 (Iowa 1988).

While section 490.830 of the Iowa Business Corporation Act provides the standards of conduct for directors, section 490.831 sets out when a director can be liable for money damages. *Compare* Iowa Code § 490.830, *with id.* § 490.831. Section 490.831 states in relevant part:

> 1. A director shall not be liable to the corporation or its shareholders for any decision as director to take or not to take action, or any failure to take any action, unless the party asserting liability in a proceeding establishes both of the following:
>
> *a.* That any of the following apply:
>
> (1) No defense interposed by the director based on any of the following precludes liability:
>
> (a) A provision in the articles of incorporation authorized by section 490.202, subsection 2, paragraph "d".

*Id.* § 490.831(1)(*a*)(1)(a).

The Code section referenced in the final quoted portion, section 490.202(2)(*d*), is commonly referred to as the "director shield statute." It permits corporations to include in their articles of incorporation provisions that immunize directors from liability, with some limited exceptions, and in part states:

> A provision eliminating or limiting the liability of a director to the corporation or its shareholders for money damages for any action taken, or any failure to take any action, as a director, except liability for any of the following:
>
> (a) The amount of a financial benefit received by a director to which the director is not entitled.
>
> (b) An intentional infliction of harm on the corporation or the shareholders.
>
> (c) A violation of section 490.832.
>
> (d) An intentional violation of criminal law.

*Id.* § 490.202(2)(*d*)(1).

As discussed earlier, when ruling on a motion to dismiss, courts generally cabin their factual analysis to the claims set forth in the plaintiff's petition and the matters on which the court can take judicial notice. *Southard,* 734 N.W.2d

at 194. Meade's petition makes no reference to EMCI's articles of incorporation. But EMCI's articles are publicly filed with the Iowa Secretary of State. The directors requested that the business court take judicial notice of them. The business court, finding EMCI's articles "capable of accurate and ready determination from a source that cannot be reasonably questioned," thus took judicial notice of EMCI's articles of incorporation. Meade doesn't challenge this determination on appeal.

EMCI's restated articles of incorporation (on file since 2004) contained director shield provisions identical to the language set forth in section 490.202(2)(*d*). EMCI's directors thus were protected from liability to the full extent permitted under the Iowa Business Corporation Act with the same four exclusions. *See* Iowa Code § 490.202(2)(*d*)(1).

As relevant in this case, Meade must establish two conditions to avoid the dismissal of his claims against the directors. First, he must show that the directors have "interposed" no defense that would shield them from liability. *Id.* § 490.831(1)(*a*)(1). Second, he must show that the directors' conduct violated one of the statutory standards of conduct, meaning that their actions were either not in good faith, not in the best interests of the corporation, or that the directors were not reasonably informed about the transaction. *Id.* § 490.831(1)(*b*)(1), (2)(*a*)–(*b*).

The director liability statute states that when a shareholder pursues a claim for money damages against a director, "the party asserting liability in a proceeding" must establish that "[n]o defense interposed by the director" would

shield the director from liability. *Id.* § 490.831(1)(*a*)(1). The phrase "by the director" naturally suggests that the director bears the burden of interposing one of the defenses to liability listed in the statute. The business court held that the directors hadn't actually interposed *any* defenses to Meade's claims, and thus Meade's claim couldn't be dismissed based on the director shield protections.

But the statute doesn't prescribe a particular pleading in which the defense must be made. Black's Law Dictionary defines *interposition,* a noun form of the verb *interpose,* as "[t]he act of submitting something (such as a pleading or motion) as a defense to an opponent's claim." *Interposition, Black's Law Dictionary* (11th ed. 2019). The statute doesn't require interposition in, for example, a list of affirmative defenses in an answer. The directors didn't initially file an answer because they filed a pre-answer motion to dismiss. *See* Iowa R. Civ. P. 1.421(1)(*f*) (permitting a defendant to assert that a plaintiff failed to state a claim for relief in a pre-answer motion). The directors instead, as part of their motion to dismiss, asked the business court to take judicial notice of EMCI's publicly filed articles of incorporation. The court did. The directors recited the director shield protections in the articles of incorporation as a defense to Meade's claim. This satisfies the directors' burden to interpose a defense to liability under section 490.202(2)(*d*).

The statute then places a burden on "the party asserting liability in a proceeding"—in other words, the plaintiff—to establish that no defense interposed by the director protects the director from liability. Iowa Code § 490.831(1). The directors suggest that Meade needed to plead in his petition,

even before the directors asserted any defense, facts that on their face expressly referenced and negated the defendants' defenses and that, having not done so, Meade's claim must be dismissed. To be sure, plaintiffs in director liability cases would be wise to predict and attempt to overcome a director's defenses in their petitions, particularly when (as here) the publicly filed articles of incorporation include director shield protections. But we don't find that the statute *requires* this type of anticipatory pleading. The phrase "interposed by a director" implies that a director acts *in response* to some action by a plaintiff. Plaintiffs do not bear some duty of raising defenses *for* directors, and thus need not themselves plead and negate in their petitions each statutory defense that a director might interpose.

## B.

But this doesn't end our inquiry. Having interposed the judicially-noticed director shield protections as a defense in their motion to dismiss, the directors argue that Meade in resistance to their motion needed to draw reasonable inferences from the petition's factual allegations to overcome the director shield defenses. The business court ruled against the directors on this argument, identifying two grounds. The business court first recited that Iowa courts generally require only "notice pleading" in a petition and stated that "[t]he court does not believe the statute requires the plaintiff must set forth facts in its petition that ultimately establishes the unavailability of each of these defenses" in the statute. On this point, we disagree with the business court's interpretation

of the statute, and thus its application of the general pleading standard to the statute.

To understand why the statute must be read in the manner that we suggest, some background on the genesis of the statute is helpful. In the mid-1980s, alarmed policymakers began enhancing protections for corporate directors in response to court rulings that expanded directors' personal liability for money damages. *See* Comm. on Corp. L., *Changes in the Revised Model Business Corporation Act—Amendment Pertaining to the Liability of Directors*, 45 Bus. Law. 695, 696 (1990) [hereinafter Comm. on Corp. L.]. The claims in these lawsuits generally arose from unintentional breaches of directors' duties of care. Doré § 28:14. One case in particular—Delaware's *Smith v. Van Gorkom* decision—raised particular concerns among directors of increased financial risk for serving on corporate boards, including concerns "about non-pecuniary costs of litigation, such as damage to reputation, loss of time, and distraction from other activities." Comm. on Corp. L., 45 Bus. Law. at 696; *see also Smith v. Van Gorkom*, 488 A.2d 858 (Del. 1985), *overruled on other grounds by Gantler v. Stephens*, 965 A.2d 695 (Del. 2009) (en banc). As a result, "outside directors of many publicly-held corporations resigned, declined to stand for re-election, or refused nomination—a reversal of a trend encouraged by the Securities and Exchange Commission, the New York Stock Exchange, and various commentators." Comm. on Corp. L., 45 Bus. Law. at 696. As one noted commentator described it, "The threat of liability for persons serving on corporate boards suddenly appeared very real." Doré § 28:14.

After Delaware and another state amended their corporate codes to authorize corporations to include director liability limitations in their articles of incorporation, "[n]early all states followed suit with similar 'director shield' laws, including Iowa in 1987." *Id.* The drafters of the Model Business Corporation Act (MBCA) have further increased protections for directors over the years. *See id.* The Iowa Business Corporation Act's director shield statute, which was amended in 2003, is modeled after the one in the MBCA. *Id.* Effective January 1, 2003, Iowa replaced its original Delaware-modeled director shield provision with the MBCA model. *Id.*

Delaware's director shield exclusions do not match the MBCA's (and thus Iowa's) director shield exclusions in an important way that enlightens our analysis of the "intentional infliction of harm on the corporation or the shareholders" exclusion in section 490.202(2)(*d*)(1)(b). Delaware's exclusion will not preclude liability for "acts or omissions not in good faith or which involve intentional misconduct." Del. Code Ann. tit. 8, § 102(b)(7) (2006). Delaware's precedent applying its director shield statute makes it clear that the "shield forecloses claims against directors for gross negligence but does *not* apply to 'conduct motivated by an actual intent to do harm' (subjective bad faith) or to lesser forms of bad faith, like a director's 'conscious disregard for . . . responsibilities' or 'intentional dereliction of duty.' " Doré § 28:14 (omission in original); *see In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 64–67 (Del. 2006) (en banc) ("[T]he legislature has also recognized this intermediate category of fiduciary misconduct, which ranks between conduct involving

subjective bad faith and gross negligence."); *see also Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 240–44 (Del. 2009) (en banc). Under Delaware law, actions that amount to "conscious disregard for responsibilities" or "intentional dereliction of duty" fall under Delaware's "bad faith" exception to the director shield—not under the statute's "actual intent to do harm" exception. *Walt Disney*, 906 A.2d at 64–66; *see also* Doré § 28:14. In contrast to Delaware's statute, Iowa's director shield statute includes *no* exception enabling liability for "acts not in good faith." Doré § 28:14. *Compare* Del. Code Ann. tit. 8, § 102(b)(7), *with* Iowa Code § 490.202(2)(*d*)(1)(b).

The official comment to the MBCA's director shield provision (the similarly numbered section 2.02(b)(4)) further supports the notion that claims of reckless conduct, conscious disregard of a duty, or intentional dereliction of a duty fail to establish Iowa's exception for "intentional infliction of harm on the corporation or the shareholders." Doré § 28:14. The comment states in relevant part:

> The use of the word 'intentional,' rather than a less precise term such as 'knowing,' is meant to refer to the specific intent to perform, or fail to perform, the acts with actual knowledge that the director's action, or failure to act, will cause harm, rather than a general intent to perform the acts which cause the harm.

Model Bus. Corp. Act § 2.02, cmt. E (2016 rev. 2017).

The business court determined that Meade sufficiently alleged liability in his petition under the exclusion to liability in EMCI's director shield provision for "intentional infliction of harm on the corporation or the shareholders." Iowa Code § 490.202(2)(*d*)(1)(b). The business court recited allegations in Meade's petition alleging misconduct by the directors, including (1) failing to

reject EMCC's merger offer as inadequate and to maintain EMCI as a standalone company; (2) failing to provide shareholders with Sandler O'Neill's analysis of the alternative proposal in the proxy statement; (3) failing to gather information about or to understand Sandler O'Neill's analysis; (4) failing to disclose to shareholders Shepard's interest in making an offer for EMCI; and (5) generally engaging in a conflicted and flawed sales process that resulted in an insufficient sales price that unfairly deprived EMCI's minority shareholders of the true value of their shares. The business court also recited Meade's allegation that the directors "*intentionally* failed to act in the face of a known duty to act, demonstrating *conscious disregard* for their duties."

We disagree with the business court's determination. Accepting Meade's allegations as true, we find Meade's allegations insufficient to establish "intentional infliction of harm on the corporation or the shareholders" by the directors. The bulk of the allegations that the business court relies on recite failures to perform duties or incompetent performance, none of which suffices. Meade's allegation that the directors consciously disregarded their duties is similarly insufficient. The statute, in short, requires a plaintiff to show a director's specific intent to harm the corporation or its shareholders, as opposed to recklessness or dereliction in performing (or failing to perform) their duties. The statute sets a high bar, no doubt; but its elevated placement has been determined by the legislature in its choice of language.

In the specific context of claims against corporate directors, complaining shareholders confront a heightened pleading requirement. This heightened

pleading requirement protects directors not merely against having to pay damages for inadequate claims, but also against the cost and stress of litigation when plaintiffs are unable to allege claims that would permit them to receive money damages. *Nelson v. Lindamen*, 867 N.W.2d 1, 7 (Iowa 2015) ("[S]tatutory immunity, like common-law immunity, provides more than protection from liability; it provides protection from even having to go to trial in some circumstances." (quoting *Hlubek v. Pelecky*, 701 N.W.2d 93, 96 (Iowa 2005))). And those protections would be undermined if defendant directors had to engage in pretrial discovery to find out exactly what wrong the plaintiff was charging them with. *Cf. Struck v. Mercy Health Servs.-Iowa Corp.*, ___ N.W.2d ___, ___, 2022 WL 1194011, at *5 (Iowa Apr. 22, 2022) ("A contrary holding would undermine the legislative goal to enable healthcare providers to quickly dismiss professional negligence claims that are not supported by the requisite expert testimony.").

A lawsuit pursuing claims against a corporate director is the type of case where a plaintiff can plead himself out of court by alleging facts that show he has no claim. *See Benskin, Inc. v. W. Bank*, 952 N.W.2d 292, 306 (Iowa 2020). "Allegations in a complaint are binding admissions, and admissions can of course admit the admitter to the exit." *Jackson v. Marion County*, 66 F.3d 151, 153–54 (7th Cir. 1995) (citations omitted). When "a provision in the articles of incorporation" adopted pursuant to Iowa Code section 490.202(2)(*d*) "shelters the director from liability for money damages" and when "such defense applies to all claims in plaintiff's complaint, there is no need to consider further the

application of [Iowa Code section 490.831]'s standards of liability." Model Bus. Corp. Act § 8.31(a), cmt. A (2016 rev. 2017). "In that event, the court would presumably grant the defendant director's motion for dismissal or summary judgment (or the equivalent) and the proceeding would be ended." *Id.* Because we find Meade's allegations insufficient to establish "intentional infliction of harm on the corporation or the shareholders" by the directors, his claims against the directors must be dismissed.[1]

Meade's appeal brief includes a one-sentence request in the conclusion asking that if we determine that his claims warrant dismissal, he be permitted to amend his petition. As a general matter, a party may move to amend a petition with the court's permission under Iowa Rule of Civil Procedure 1.402(4).[2] But Meade has failed to share any facts suggesting that he has claims that are not barred by the director shield provision that would warrant leave to amend.

Meade's resistance to the motion to dismiss in the district court made no mention of any request to amend his petition. It is styled simply as a "resistance to defendants' motion to dismiss." A contingent request for leave to amend with a resistance to a motion to dismiss is permissible and allows courts to provide leave to amend as an alternative form of relief. Meade accompanied his resistance

---

[1]Iowa Code section 490.1302 provides shareholders appraisal rights to obtain payment for the fair value of their shares if they believe a merger buyout price is inadequate. Meade didn't seek to enforce his appraisal rights and instead pursued a class action lawsuit on behalf of himself and the other former owners of EMCI's common stock.

[2]And indeed, Meade could have amended his petition without leave of court any time before the directors filed a responsive pleading. Iowa R. Civ. P. 1.402(4). The directors didn't actually file a responsive pleading (their answer) until about a year after they filed their motion to dismiss. Meade made no attempt to amend on his own during that period.

with a seventy-eight-page brief explaining how his petition satisfied the legal requirements to overcome the directors' motion. The resistance brief, like his appeal brief, included a single sentence, also in the conclusion, making a similar request if we ruled against him. Meade failed to request or argue for leave to amend at the district court's hearing on the motion to dismiss. "[A] post-dismissal motion to amend is 'disfavored,' independent of any other consideration." *Plymouth County v. Merscorp, Inc.*, 287 F.R.D. 449, 464 (N.D. Iowa 2012) (quoting *U.S. ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 823 (8th Cir. 2009)) (denying a request for leave to amend where the plaintiff "adopted a strategy of vigorously defending his initial Complaint, despite its . . . deficiencies [and] now wants a judicial reprieve"). We deny Meade's request to amend his petition.

IV.

Because we reverse the business court's ruling on the directors' motion to dismiss for the reasons stated above, and because that holding is dispositive of this appeal, we need not address the directors' other arguments seeking dismissal of the claims. We remand to the business court to enter judgment consistent with this opinion and for further proceedings in the case.

**REVERSED AND REMANDED.**